Henry GALLANT, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 84–1689.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1984.

Decided Dec. 6, 1984.

Gove L. Allen, Meza, Ariz., for plaintiff-appellant.

Gary L. Floerchinger, Asst. Regional Atty., San Franscisco, Cal., for defendant-appellee.

Before FERGUSON and NELSON, Circuit Judges, and JAMESON,* District Judge.

FERGUSON, Circuit Judge.

The Secretary of Health and Human Services, concluding that Harry Gallant was not disabled within the meaning of the Social Security Act, denied his claim for Social Security disability benefits. 42 U.S.C. § 423. The district court affirmed the Secretary's decision. Gallant appeals to this court and we reverse.

FACTS

Harry Gallant was born in 1934, and has completed nine years of formal schooling. He worked for 25 years as an operating engineer, operating heavy equipment and as a truck driver hauling heavy equipment. Claimant sustained his injury on October 25, 1978, as a result of falling four to five feet from a piece of machinery while at work. Subsequently, a myelogram was performed and in November, 1978, he underwent surgery for a herniated disc and was off work for approximately five months. Claimant attempted to continue his former employment, but after three and a half weeks he was forced to terminate because of his back problems.

Thereafter, claimant was treated by Drs. Bloemendaal and Syrenne and was evaluated at the pain clinic at Harborview Medical Center, Seattle, Washington in September and October, 1980. Tests revealed claim-

* Hon. William J. Jameson, Senior United States District Judge, District of Montana, sitting by designation.

ant had a posterior disc protrusion and on October 23, 1980, he underwent surgery for laminectomy, foraminectomy and fusion.

Claimant thereafter moved to Arizona and was treated by Drs. Lewis and Shetter and was hospitalized at the pain clinic at St. Joseph's Hospital from February 6, 1982 to March 5, 1982, where he was seen by Drs. Thomas, Ginsberg and Collier. Until the hearing before the administrative law judge (ALJ) Gallant continued under the treatment of Dr. Ginsburg, Dr. Shetter and Dr. Thomas. Claimant has not worked since January 1980.

Claimant filed for disability insurance benefits on June 11, 1981, claiming disability commencing October 25, 1978. His application was denied both initially and on reconsideration. Gallant requested a hearing and on June 4, 1982 he appeared before the ALJ with his counsel.

Based on the evidence submitted at the hearing, the ALJ found claimant suffers from the following medically determinable impairments: status post back surgery, November 1978 and October 1980; chronic low back pain syndrome; and mild depressive neurosis. However, the ALJ found that claimant's impairments, while at a level of severity to prevent him from engaging in his past medium to heavy work, were not of such a level to prevent him from engaging in light and sedentary forms of substantial gainful activity. Therefore, the ALJ denied claimant's disability claim.

Gallant brought an action in the district court for judicial review of this decision pursuant to 42 U.S.C. § 405(g). On cross motions for summary judgment, the district court denied Gallant's motion for summary judgment and granted that of the Secretary. This appeal followed.

STANDARD OF REVIEW

On judicial review, the Secretary's determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g), and the Secretary applied the proper legal standards. *Hall v. Secretary of HEW*, 602 F.2d 1372, 1374–75 (9th Cir.

1979). Substantial evidence means more than a mere scintilla of evidence. " 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " (*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

DISCUSSION

In order to qualify for Social Security disability benefits a claimant must establish that a medically determinable physical or mental impairment prevents him from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The impairment must result from abnormalities which are demonstrable by medically acceptable clinical or laboratory diagnostic techniques, 42 U.S.C. § 423(d)(3), and must be expected to result in death or last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

The claimant has the burden of proving disability within the meaning of the Social Security Act. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir.1984). "However, after a claimant establishes a *prima facie* case of disability by showing his inability to perform former work, the burden shifts to the Secretary to prove that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Id.*

Conceding the evidence supported Gallant's claim that he was unable to perform his former work, the ALJ found, however, that Gallant could engage in light and sedentary forms of substantial gainful employment.

a. *Substantial Evidence*

Gallant contends that substantial evidence is lacking to support the ALJ's conclusion that claimant is not subject to any significant impairment that significantly limits his ability to engage in light and sedentary forms of gainful activity.

The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ. *Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427; *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982). Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld, *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir.1971); and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence. *Beane v. Richardson*, 457 F.2d 758 (9th Cir.), *cert. denied*, 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1972).

At the hearing before the ALJ, claimant testified that his major complaints were of constant low back pain and aching in both legs. Claimant testified that he rises daily at approximately 7:30 a.m., retires around midnight, and is in severe pain throughout the day. While the ALJ noted claimant performs household chores including his own cooking, the record reveals claimant testified he did no housework, but cooks a meal for himself and his nephew or sister-in-law and does the dishes.

Claimant testified he could not sit over 10 minutes or stand over half an hour without back pain. He estimated he could lift between 5 to 10 pounds. He takes several walks a day for about 20 to 25 minutes each, walking about a block or block and a half, resting and then returning home and swims about 8 to 10 times a day averaging 5 minutes at a time.

The medical evidence submitted at the hearing reveals that claimant underwent surgery for a herniated disc in 1978 and a laminectomy and foraminectomy in 1980; and that, although claimant has recovered well in terms of reduced motor capabilities, he remains in constant low back pain and has been limited both in flexion and extension. This constant pain has prompted physicians to recommend that claimant wear a lower back brace as well as a lumbar flexion jacket. Medical reports indicate pseudoarthrosis is present, requiring claimant to undergo an exploration and repair of the lumbosacral pseudoarthrosis.

Thus the record indicates, and the Secretary acknowledges, that the claimant has shown that his impairments prevent him from continuing in his former employment. The fact of the claimant's physical impairments, at least as they relate to his back condition, are not in dispute. It is rather the *severity* of the impairments and the extent to which they limit his ability to engage in other employment that are in question.

After reviewing the numerous medical records indicating claimant's significant continuing physical impairments and consistent complaints of chronic pain, the ALJ found the claimant's medically determinable impairments do not meet or equal the severity of the "Listing of Impairments" for presumed disability found in Appendix 1 to Subpart P of the Code of Federal Regulations. 20 C.F.R. pt. 404, subpart P, app. 1. The ALJ then concluded that the functional limitations imposed by claimant's exertional impairments restricted his ability to engage in sustained activity on a regular basis and deprived claimant of his ability to engage in medium and heavy work, but that claimant retained the ability to engage in light and sedentary work on a regular basis.

Although the ALJ did not indicate precisely what medical evidence required this decision, he referred to the reports of two doctors. Dr. Frankel estimated claimant would be prevented from engaging in his past work for four to six months after his second back surgery; and Dr. Shetter stated that, as of April 2, 1982, "there was no evidence of nerve root compromise or stenosis," and specified that "further surgery was not indicated." The latter report, however, also noted that the evaluation of claimant at St. Joseph's Hospital pain clinic suggested the possibility of a pseudoarthrosis and referred claimant to a Dr. Ginsberg for evaluation. Although the ALJ referred to the report of Dr. Ginsberg dated May 12, 1982, confirming the presence of pseudoarthrosis and indicating the possi-

bility of future surgery, the ALJ found that "even with the possibility of future surgery, there are no objective findings of record which support a conclusion that claimant is precluded from engaging in light exertional activity." The ALJ concluded that "while no doubt claimant does have residual chronic pain and discomfort," such is not severe, but mild to moderate, and does not prevent claimant from performing light work.[1]

Contrary to the ALJ's conclusion, the medical evidence and claimant's testimony depict an individual who cannot sit, stand or walk for any length of time without severe pain, and who must alternate periods of sitting, standing and walking throughout the course of each day. "A man who cannot walk, stand or sit for over one hour without pain does not have the capacity to do most jobs available in the national economy." *Delgado v. Heckler*, 722 F.2d 570, 574 (9th Cir.1983).

The evidence introduced relative to Gallant's ability to perform work-related activities indicates that although no psychiatric disability limits his ability to understand, carry out and remember instructions, restriction of his daily activities and ability to respond to customary work pressures is severe due to his persistent, severe and unremitting pain. The reports show that claimant is not a malingerer and is severely and genuinely disabled. The only reports which directly support a finding of Gallant's ability to engage in light and sedentary levels of exertion were made by two staff physicians who never examined claimant, but who based their conclusions on a review of submitted medical evidence. "A

report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984).

■ The reports of the physicians who did examine claimant, which were submitted relative to Gallant's work-related ability, are persuasive evidence of claimant's disability due to pain and his inability to engage in any form of gainful activity. Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons for rejecting such an opinion where it is uncontradicted. *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981). While the ALJ mentioned these opinions, he did not set forth any specific reasons for rejecting their uncontroverted conclusions.

Thus, because the reports of the non-examining physicians were contradicted by all other evidence in the record, the medical evidence relied on below to support the Secretary's determination that Gallant can engage in light and sedentary forms of gainful employment does not constitute substantial evidence that claimant has the residual capacity to perform the levels of exertion required under the Secretary's definition of "light and sedentary" work.

■ The ALJ found Gallant's allegations of disabling pain not credible or convincing. In making this determination, the ALJ stated he considered claimant's testimony, the objective medical evidence, claimant's daily

---

1. Light work is defined in section 404.1567(b) of title 20 of the Code of Federal Regulations as follows:

    (b) *Light Work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substan-

    tially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

    As demonstrated by the above definition, light work involves frequent lifting or carrying of objects weighing up to ten pounds. Because "frequent" means occurring from one-third to two-thirds of the time, the full range of light work requires standing or walking for up to two-thirds of the workday. SSR 83–10 Unempl. Ins.Rep. (CCH) (New Matters) ¶ 14,531.

activities and claimant's demeanor at the hearing. While the ALJ can disregard a claimant's self-serving statements, to do so they must be unsupported by objective findings. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir.1984). Additionally, this circuit has accepted "the validity of the proposition that subjective symptoms of pain are a significant factor to be weighed in determining whether there exists 'disability' as defined in the Act." *Mark v. Celebrezze*, 348 F.2d 289, 292 (9th Cir. 1965).

The ALJ, in discrediting Gallant's complaints of pain, referred to the fact Gallant was not currently taking pain medication and had taken pain medication only intermittently in the past. The ALJ failed to note, however, that one Dr. Sanders on August 19, 1981 specifically recommended claimant continue on no medication (claimant took Empirin from 1978 to November, 1980, but stopped due to its side effects). Muscle relaxants were prescribed while claimant was a patient at St. Joseph's Hospital, which claimant has been taking twice a day since that time. The ALJ also found that claimant's testimony regarding his daily activities was consistent with a light level of exertion, noting that claimant reads for long periods of time, watches television and socializes. In his testimony, claimant indicated he reads while laying down on the couch and that he could not watch a television program from beginning to end in a seated position, but must lay down or lean up against a counter with his legs apart.

Both the ALJ and the district judge placed emphasis on the fact that during claimant's in-patient stay at the pain clinic at St. Joseph's Hospital he repeatedly declined participation in the occupational therapy program. Our review of the evidence indicates that claimant did not attend the occupational therapy sessions but did come into the therapy area and socialize while there. He could not sit however, for more than a few minutes at a time, and was in pain even when engaged in conversation. When asked why he was not involved in occupational therapy, claimant stated he was unable to sit and that after attending a group therapy session for an hour he had to stand and walk about.

On this, and other less significant medical evidence, the ALJ concluded that Gallant's claim of inability to work was unpersuasive and unsupported by substantial evidence. However, every medical report forming the basis of this record notes Gallant's complaints of persistent back pain. Further, the record is replete with objective clinical findings which support and confirm claimant's allegations of severe and chronic pain. There was no positive evidence that claimant was not suffering as much pain as he claimed to suffer. No witness, qualified expert or otherwise, expressed the opinion that claimant was in any way malingering.

The ALJ in part based his rejection of the objective medical evidence and the claimant's subjective complaints of constant pain on Gallant's demeanor at the hearing, noting that he sat for over an hour without any apparent distress. The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible. *Day v. Weinberger*, 522 F.2d 1154, 1156–57 (9th Cir.1975). No clear and convincing reasons were provided by the ALJ for his rejection of the testimony of Gallant regarding his constant and persistent back pain.

The ALJ's decision as to whether a claimant is disabled must be upheld if it is based on substantial evidence. But in determining whether there is substantial evidence to support the ALJ's finding, a reviewing court must consider both evidence that supports, and evidence that detracts from, the examiner's conclusion. "We cannot affirm the examiner's conclusion simply by isolating a specific quantum of supporting evidence." *Day v. Weinberger*, 522 F.2d at 1156.

Here, there were both subjective and supporting objective clinical evidence of pain, but the ALJ nevertheless rejected

both. Although it is within the power of the Secretary to make findings concerning the credibility of a witness and to weigh conflicting evidence, *Rhodes v. Schweiker,* 660 F.2d 722, 724 (9th Cir.1981), he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result. *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982).

■ Viewing the record as a whole, it is clear that all doctors who examined claimant concur that claimant's condition is a source of constant pain for him. Although claimant's testimony of his persistent, disabling pain is corroborated by the medical reports of eleven treating physicians, the ALJ rejected this strong evidence in favor of insubstantial evidence—i.e., the report of non-treating, non-examining physician, combined with the ALJ's own observance of claimant's demeanor at the hearing. Therefore, the ALJ's finding that Gallant's allegations of severe pain do not preclude substantial gainful activity is not supported by substantial evidence.

■ The testimony of the vocational expert in this case cannot constitute substantial evidence to support the ALJ's findings. A vocational expert's testimony in a disability benefits proceeding "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker,* 694 F.2d 639, 643–44 (9th Cir.1982). The hypothetical question asked of the vocational expert in this case specifically excluded pain as a limitation to Gallant's exertional capabilities. Because claimant's allegations of persistent disabling pain are supported by the medical evidence in this case and the ALJ had no clear or convincing reasons for rejecting such claims, claimant's pain should have formed a part of the ALJ's question to the expert. "[A] hypothetical question should 'set out all of the claimant's impairments.'" *Baugus v. Secretary of Health & Human Services,* 717 F.2d 443, 447 (8th Cir.1983) quoting *O'Leary v. Schweiker,* 710 F.2d 1334, 1343 (8th Cir.1983). If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value. The most appropriate way to insure the validity of the hypothetical question posed to the vocational expert is to base it upon evidence appearing in the record, whether it is disputed or not. That procedure was not followed in this case. Rather, the expert was asked to assume claimant's physical capabilities conformed to those of one with the ability to perform the categories of light and sedentary work. Unless there is record evidence to adequately support this assumption, the opinion expressed by the vocational expert is meaningless. Here the vocational expert was not instructed to consider either Gallant's constant pain or his need to alternate periods of sitting and standing. When cross-examined, the vocational expert admitted that if claimant in fact suffered from constant, severe pain, it would preclude him from all work activity. Because neither the hypothetical nor the answer properly set forth all of Gallant's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.

### b. *Medical-Vocational Guidelines*

■ Gallant also asserts that the ALJ improperly applied Appendix 2 of the medical-vocational guidelines in this case. Although claimants have the burden of proving disability, once they show that their impairment prevents them from doing their previous job, the burden of going forward with the evidence shifts to the Secretary. *Thompson v. Schweiker,* 665 F.2d 936, 939 (9th Cir.1982). The Secretary must show that claimants can do less demanding substantial gainful work, given their age, education, and work experience. To meet this burden, the Secretary may rely on the medical-vocational guidelines in certain circumstances. 20 C.F.R. pt. 404 subpart P, app. 2. *See Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

■ The guidelines describe only "major functional and vocational patterns," 20 C.F.R. pt. 404, subpart P, app. 2, § 200.-00(a), and if the medical-vocational guide-

lines "fail accurately to describe a claimant's particular limitations, the Secretary may not rely on them alone to show the availability of jobs for that claimant." *Stone v. Heckler,* 722 F.2d 464, 468 (9th Cir.1983). The ALJ found that Gallant had the residual functional capacity to perform light and sedentary work and applied Medical-vocational Rule 202.19 and Rule 202.17 which the ALJ concluded mandated a finding of "not disabled." 20 C.F.R. pt. 404, subpart P, app. 2, §§ 202.17, 202.19. However, based on claimant's persistent back pain, which prevents him from prolonged periods of sitting (not over 10 minutes without pain), or standing (not over half an hour), and necessitates that he alternate periods of sitting, standing, and walking, claimant argues his exertional capabilities fall between ranges of work and therefore Appendix 2 was improperly applied in this case.

■ To provide adjudicative guidance when a claimant's limitations do not meet a defined exertional capacity, the Secretary issued a "Program Policy Statement." SSR 83–12 Unempl.Ins.Rep. (CCH) (New Matters) ¶ 14,533 (1983). Under the heading "Special Situations," the statement discusses the impact of a finding that the claimant must alternate periods of sitting and standing. Such a claimant is defined as functionally not capable of doing either the prolonged sitting contemplated in the definition of sedentary work or the prolonged standing or walking contemplated for most light work. Because the occupational base is greatly reduced, the ALJ is directed to consult a vocational expert in such cases. Although the ALJ in this case did correctly avail himself of the testimony of a vocational expert, he still erred in applying Appendix 2 to Gallant's case because, as discussed above, the vocational expert was not instructed to consider this additional impairment (i.e., that claimant must alternate periods of sitting and standing) nor the constant low back pain of claimant. Therefore, the testimony by the vocational expert in this case did not constitute substantial evidence sufficient to support the ALJ's finding that Gallant was able to engage in light and sedentary forms of substantial gainful employment.

## CONCLUSION

The Secretary did not meet her burden of proving that claimant was capable of performing light and sedentary forms of gainful employment and the decision of the ALJ is reversed. This court finds the ALJ's characterization of claimant's residual capacity as capable of light and sedentary work unsupported by substantial evidence.

Because we find substantial evidence in the record as a whole supporting that Gallant is disabled within the meaning of the Act, we need not remand the case to the ALJ for further proceedings. Therefore, we reverse the judgment of the district court and remand with instructions that a judgment be entered awarding disability benefits to the claimant.

REVERSED.

JAMESON, District Judge (dissenting):

I respectfully and reluctantly dissent. Clearly there is evidence to support a finding of total disability, but from my review of the record as a whole I conclude that there is also substantial evidence to support the finding of the administrative law judge (ALJ) that Gallant is capable of doing light work.

Our scope of review is well summarized in *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982):

> Our sole inquiry is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge.... Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld.... In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence. (Citations omitted). The ALJ need not substitute the judgment of expert witnesses for his own. 20 C.F.R. § 404.1526–27; cf. *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir.1975) (reason for rejection

must be offered where such testimony is uncontroverted). Where as here, medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir.1971); see also *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir.1980).

The ALJ recognized in his findings that if the claimant in fact suffered from constant, severe, excruciating pain, he would be precluded from all work activity. After analyzing in some detail Gallant's testimony at the hearing and various reports of the eleven doctors received as exhibits, the ALJ, in weighing the evidence as to the "level of pain," said in part:

Claimant testified that he does not currently take pain medication, and the medical evidence also shows that he has taken pain medication only on an intermittent basis. Claimant's testimony of his daily activities are consistent with a light level of exertion. His ability to concentrate is fully demonstrated in that he enjoys reading for long periods of time, watching television, and socializing. Hospital records from St. Joseph's show that claimant was very social and enjoyed the company of other patients during his in-patient stay at the hospital. Dr. Shetter, in his January 15, 1982 report, noted that vocational rehabilitation counseling "should be part of his (claimant's) overall treatment program since it seems highly unlikely that he will be able to return to his previous job as a heavy equipment operator." During his in-patient hospital stay at the pain clinic, claimant repeatedly declined participation in the occupational therapy program. At the hearing claimant was observed by the undersigned to be able to sit for over an hour without any apparent distress. The treating physicians have repeatedly described claimant during physical examination as being in no apparent distress, mild distress, no acute distress, etc. Dr. Bloemendaal reported on June 18, 1979 and December 3, 1979, that claimant appeared in no discomfort and walked with a normal gait. On May 19, 1980, Dr.

Bloemendaal reported claimant had a 10% impairment rating. There were no objective findings to account for his "continued complaints." On November 3, 1980, Dr. Frankel described claimant as being "in no acute distress." On February 18, 1982, Dr. Ginsburg described claimant as a "well developed, alert, oriented 47 year old male in no acute distress." Claimant's gait was normal and he was able to heel-toe walk. Dr. Thomas reported on February 9, 1982, that his physical examination showed claimant was "in no acute distress." Evaluation by the pain team at St. Joseph's revealed there was no evidence of root compromise. The only therapeutic intervention was strengthening exercises and an immobilization jacket. Claimant testified that he has discontinued wearing a jacket or other support. MMPI testing results have been shown to be consistent with a propensity for secondary gains. Claimant is viewed as an individual who can no longer perform his prior work, and at this point has no inclination to enter a new field of endeavor. Consequently, he views himself as disabled. Under the Social Security Act, although he may be disabled from performing his past work, *he must also show by objective evidence including clinical and laboratory findings that he has an impairment so severe as to preclude him from performing alternative work of a lighter nature than his past work.* To place a younger individual such as claimant on the disability rolls for the rest of his life based on the objective evidence in this record would be a disservice to him and the credibility of the system. After having two back surgeries, no doubt claimant does have residual chronic pain and discomfort; however, such pain is found to be of a mild to moderate nature generally and as such does not prevent claimant from performing light work.

(Emphasis added).

After "carefully reviewing the entire records," the district court concluded "that there is substantial evidence to support the

ALJ's conclusion that Gallant is capable of light work activity." I agree.

Throughout the record there is evidence that Gallant's claims of pain were out of proportion to any observed organic pathology. He was frequently described by examining physicians as a person in "no acute distress." While not a malingerer, the psychological tests indicated that Gallant was preoccupied with pain and could be prone to unconsciously trigger or exacerbate his symptomatology. His cooperation in recommended treatment generally was at best sporadic. In addition to the medical reports specified in the portion of the ALJ's decision quoted above, other reports include the following:

Dr. Gastòn H. Syrenne, a neurological surgeon, examined Gallant on January 17, 1980. His examination revealed that Gallant experienced no limping and that his motor power and tone in both legs was normal. Dr. Syrenne concluded that "there is no evidence of any recurrent herniated disc" and that the "myelogram looks pretty well within normal range." He also found no sign of arachnoiditis. After reviewing Dr. Syrenne's report, Dr. Bloemendaal, an orthopedic specialist, concluded that further surgery was not warranted. Because of Gallant's "continued complaints without any objective findings," Dr. Bloemendaal recommended that Gallant be evaluated by a pain clinic.

Gallant was treated at the Orthopedic Clinic at the University of Washington Hospital from September 9, 1980 until October 3, 1980. The clinic notes indicate that Gallant was "in mild distress." The Minnesota Multi-Phasic Personality Inventory (MMPI) indicated that Gallant had "a very large number of vague, diffuse chronic somatic complaints" which were likely to increase in response to stress. In patients with profiles like Gallant's "there is typically a low correspondence between reports of pain and demonstrable organic pathology." The report suggested that Gallant may receive "substantial secondary gain from his symptoms or complaints." A refusal to comply with treatment would be consistent with Gallant's profile. The examining psychologists, Drs. Prosser and Carlin, concluded that Gallant had a "hysterical personality."

Although Gallant responded to hot packs, high voltage stimulation, ultrasound and massage treatments, on October 23, 1980 he again underwent surgery. Dr. Jeff Parker, an orthopedist, examined Gallant on November 13, 1980. He concluded that Gallant was doing quite well and was "independent in all motions." Gallant was also able to heel and toe walk without any difficulty. On February 3, 1981 Dr. Victor H. Frankel, a professor of orthopedic surgery at the University of Washington Hospital, reported Gallant's condition after his October 23, 1980 surgery. He indicated that Gallant would be completely disabled for from four to six months following the surgery and that it would be difficult for Gallant to ever again drive heavy equipment or drive trucks long distances.

On July 28, 1981 Dr. A.P. Manolio made a physical capacities evaluation from the medical records, without examining Gallant. In his opinion Gallant could stand as well as walk for five hours and he could sit from six to eight hours. Also, Gallant could lift and carry five pounds frequently and ten pounds occasionally. Dr. Lester B. Weisenberg made another physical capacities evaluation from the medical records on November 19, 1981. His report indicated that Gallant could climb steps but not ladders. In his opinion Gallant could stand as well as walk for six hours and could sit for eight hours. He concluded that Gallant could lift and carry ten pounds frequently and twenty pounds occasionally.

Upon the recommendation of Dr. Andrew Shetter, a neurosurgeon, of inpatient treatment in the pain program at St. Joseph's Hospital, Gallant was hospitalized from February 6 to March 5, 1982. Throughout this period Gallant did not attend occupational therapy; nor did he otherwise involve himself in the program. Dr. Herbert L. Collier, a psychologist, evaluated Gallant while he was in the hospital. The MMPI profile indicated that Gallant was depressed and "seem[ed] to have the capacity to unconsciously trigger and/or exacerbate

symptomatology on an unconscious conversion basis." The Scripps Pain Index indicated that Gallant was preoccupied with pain. Dr. Collier concluded that Gallant was "depressed, angry, self-preoccupied and [had] a capacity for acting out."

Dr. Thomas N. Thomas a psychiatrist, also examined Gallant in February 1982, while he was hospitalized. Dr. Thomas described Gallant as a "well developed, white male in no acute distress." His impression was that Gallant suffered "chronic pain syndrome with underlying depression." In a subsequent report on May 5, 1982, however, he found Gallant in "persistent, severe and unremitting pain," "not a malingerer," and "severely and genuinely disabled." In a letter dated June 10, 1982 Dr. Thomas explained that his statements related to the severity of Gallant's back problem and not to any psychiatric impairment.

Dr. Howard Ginsburg examined Gallant in February, 1982. He also stated that Gallant was well developed and in "no acute distress." Dr. Ginsburg concluded that Gallant had not given the support jacket a proper trial in that he took it on and off. He recommended a regular program of wearing the jacket for 8 to 10 hours a day, thoracic extention exercises, and a mild muscle relaxant. In a letter dated May 12, 1982 Dr. Ginsburg stated that on May 3, 1982 he found Gallant's back pain had been increasing; that he had received some relief from the jacket and the pain recurred when the jacket is removed; that Gallant would undergo an "exploration and repair of the lumbrosacral pseudarthrosis;" and that through this surgical repair and "prolonged immobilization, the likelihood of a successful result is good."

After the hearing before the administrative law judge, on September 5, 1982, Gallant underwent a third operation. His condition after this operation was not considered by the ALJ. Gallant argued before the district court that the court should consider evidence with respect to this surgery. The district court properly concluded that not having been considered by the ALJ it was not material to the period of disability in question. The court noted that if Gal-

lant's condition has worsened as a result of this surgery, he may file a new application for benefits alleging a later period of disability.

I conclude that the administrative law judge's finding that Gallant was capable of light and sedentary work is supported by substantial evidence. I would affirm the judgment of the district court.