947 F.2d 950
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Leonard A. SANTOS, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 90-16038.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1991.
Decided Nov. 5, 1991.
 
 Before GOODWIN, SCHROEDER and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Leonard A. Santos appeals the district court's judgment affirming the decision of the Secretary of Health and Human Services that Santos was not entitled to disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. Santos contends that the Secretary failed adequately to identify jobs in the national economy for which Santos is qualified and therefore improperly labelled him "not disabled." Because we agree with Santos we reverse and remand for an award of benefits.
 
 
 3
 Santos filed an application for disability insurance and supplemental social security benefits on May 4, 1983. He alleged disability beginning on June 9, 1981 due to a work-related traffic accident which caused injuries to his back, neck, legs, arms, hands, fingers and head. As a result of his injuries, Santos experiences pain in his back and buttocks, numbness in his legs, and stiffness and swelling in his fingers and joints. He has testified that he can sometimes stand for only five to ten minutes before he feels sharp pain in his back and legs. He has stated that he cannot put weight on his left leg and must occasionally drag it in order to walk. There is an ALJ finding that he can walk or sit for no more than an hour at a time and can lift only ten to twenty pounds.
 
 
 4
 At the time of his application, Santos was 49 years old and had completed school through the eleventh grade, but vocational testing showed that he had the functional equivalent of a third-grade mathematics level and a second-grade reading level. His previous work experience included jobs as a truck driver, sheet metal press machine operator, overhead crane operator, forklift operator, bartender, and pipefitter.
 
 
 5
 At Santos' first hearing, the Administrative Law Judge determined that Santos was not disabled because he could perform "light work" as described in Table 2 of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter "grids" or "guidelines"). Santos filed a complaint in the district court seeking review of the denial of benefits. On December 16, 1986 the district court found that because Santos was unable to perform the full range of light work described in Table 2 of the grids, the ALJ had erred by relying exclusively on the grids without taking testimony from a vocational expert. The court remanded the case for further administrative action.
 
 
 6
 At the hearing on remand, before a different ALJ, Santos and a vocational expert testified, and the ALJ received into evidence the medical records of Santos' treating physicians and consultants. The ALJ concluded that: (1) Santos suffers from severe degenerative joint disease, cervical spondylosis, and episodic depression, but does not have an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listed impairment"); (2) Santos was disabled from performing his past relevant work; (3) Santos has the functional equivalent of a limited education and no transferable skills; (4) Santos has the residual functional capacity to do work which requires lifting no more than 20 pounds or no more than one hour of uninterrupted standing or sitting; and (5) due to exertional limitations not described in the grids, Santos cannot perform a full range of either light or sedentary work. Using the grids and the testimony at the hearing as a "framework for decision," the ALJ determined that there are "a significant number of jobs in the national economy which he could perform," including courier and cashier at a self-service gas station. The Appeals Council adopted the ALJ's recommendations and denied benefits. The district court entered summary judgment in favor of the Secretary.
 
 
 7
 We must affirm the Secretary's denial of disability benefits if substantial evidence in the record supports the findings of fact and the decision is not based on legal error. 42 U.S.C. § 405(g); DesRosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir.1988); Wilson v. Heckler, 761 F.2d 1383, 1386 (9th Cir.1985). Where the record supports the Secretary's decision but contrary evidence exists, this court will not substitute its judgment for that of the administrative law judge. Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir.1985).
 
 
 8
 Santos raises two main objections to the ALJ's findings. First, he contends that the ALJ should not have used the grids at all because they do not accurately describe his condition. Second, he contends that the vocational expert's testimony was insufficient as a matter of law to support the finding of the ALJ that jobs exist in the national economy which Mr. Santos could perform. We need not reach Santos' first contention; we find that his second has merit even assuming the use of the grids was proper.
 
 
 9
 The Secretary's grids are an administrative tool used to evaluate the availability of work for persons whose disability prevents their return to their own past relevant work. When the grids fail accurately to describe a claimant's particular limitations, the Secretary may not rely on them to show the availability of jobs for the claimant but must take the testimony of a vocational expert and identify specific jobs within the claimant's capabilities. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir.1988). The testimony of the vocational expert must be tailored to the facts of the particular claimant. This court has held that "[a] vocational expert's testimony in a disability benefits proceeding 'is valuable only to the extent that it is supported by medical evidence.' " Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984) (citations omitted).
 
 
 10
 Even when expert testimony is required, however, the grids continue to provide a framework within which the ALJ must make the determination of disability. See 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(d) (1991) ("when the necessary judgments have been made as to each factor and it is found that no specific rule applies, the rules still provide guidance for decisionmaking ... [and] the adjudicator then has a frame of reference for considering the jobs or types of work ... in terms of numbers of jobs remaining for a particular individual").
 
 
 11
 In Santos' second hearing, the ALJ purported to rely on the grids as a framework for evaluating the testimony of the vocational expert. Although the ALJ did not specifically state how he employed the grids as a framework, his analysis points to a significant narrowing of the range of jobs potentially open to Santos: his age and lack of education and transferable skills make him unqualified for sedentary work and the light work for which he may qualify in spite of these factors must be tailored to fit the particular physical limitations which prevent Santos from performing the full range of light work.
 
 
 12
 As a framework, then, the grids demonstrate that the field in which jobs may be found which suit Santos is significantly narrowed by his physical limitations. The Secretary's own Social Security Ruling, SSR 83-12, supports this interpretation of the grids. In discussing the use of the grids as a framework for evaluating special situations where the claimant can perform some but not all of the tasks at more than one exertion level (in other words, Santos' situation), the Ruling states:
 
 
 13
 There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base. [Emphasis added.]
 
 
 14
 From this ruling it is clear that the ALJ is under a special obligation to inquire and "clarify the implications" in cases such as Santos' which do not fall completely into clearly defined categories. We note that SSR 83-12 also highlights the special challenge faced by the unskilled worker, limited in the way Santos is. In this case, the dispositive issue is whether the expert testimony sufficiently identified jobs for which Santos is qualified.
 
 
 15
 In the standard case involving vocational expert testimony, the ALJ poses a hypothetical question to the vocational expert which includes all of the claimant's limitations. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir.1991) (citing Gallant, 753 F.2d at 1456). Here, the parties agree that Santos was precluded from his past relevant work by physical limitations, and that he could perform only a partial range of light or sedentary work. Consequently, the vocational expert was required to identify jobs in the national economy that Santos could perform in light of these limitations.
 
 
 16
 The vocational expert stated that Santos could perform cashier's jobs in a self-service setting such as a gas station, or delivery jobs that did not involve heavy lifting, such as delivery of medical supplies or documents. He reached this conclusion, however, as the result of ambiguously framed hypothetical questions which purported to incorporate by reference elements of prior testimony. It is not clear from the record precisely which characteristics the vocational expert was to take into account in formulating his answer. Furthermore, the ALJ did not specifically query the vocational expert as to how he could account for certain evident inconsistencies between his findings about Mr. Santos' condition and the jobs he identified. The vocational expert testified, for example, that Santos' vocational test results showed a second-grade reading level and third-grade mathematics abilities. Although the vocational expert presumably considered the results of the vocational testing in identifying possible jobs, he did not explain how Santos could handle a cashier's job despite his third grade level math proficiency. The government suggests that Santos' past work as a bartender qualifies him to be a cashier. Santos, however, offered uncontradicted testimony that he did not handle money or forms in that job, but merely served drinks. The ALJ failed to make specific inquiry on this point.
 
 
 17
 Similarly, although the ALJ found that Santos could stand or sit continuously for no more than one hour, the vocational expert's response to one hypothetical question indicated that Santos could undertake delivery jobs that require significant amounts of driving. The vocational expert did not explain how an individual so limited in his ability to sit continuously could manage a job involving frequent, possibly extended periods of driving in a metropolitan setting. The ALJ made no attempt to clarify this apparent contradiction.
 
 
 18
 Because of these inconsistencies, we cannot find that the ALJ's conclusion that Santos could perform these jobs is supported by substantial evidence in the record. The Secretary has not met his burden of showing that Santos can perform work in the national economy. See, e.g., Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1279 (9th Cir.1987).
 
 
 19
 The medical record has been fully developed over the course of two administrative hearings, and the Secretary has failed to unambiguously identify residual jobs that Santos can perform. Because further administrative proceedings will serve no purpose, see Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir.1989), we reverse the judgment of the district court and remand for an award of disability benefits.
 
 
 20
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Circuit R. 36-3