**Terry BROWN, Plaintiff,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant.**

**No. 00–1197–HO.**

United States District Court, D. Oregon.

July 26, 2001.

Tim D. Wilborn, Portland, OR, for Plaintiff.

William W. Youngman, U.S. Attorney's Office, Portland, OR, Lucille G. Meis, Social Security Administration, Office of General Counsel, Seattle, WA, for Defendant.

## ORDER

HOGAN, District Judge.

Plaintiff-claimant Brown ("claimant") brings this action pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the Social Security Commissioner's final decision denying claimant's application for so-

cial security disability insurance benefits and supplemental security income disability benefits (collectively "disability benefits"). For the reasons set forth below, the Commissioner's decision is affirmed.

### I. *Procedural Background*

Claimant filed applications for Title II disability insurance benefits and Title XVI supplemental security income disability benefits on May 5, 1997, and April 4, 1997, respectively. These applications were denied initially and upon reconsideration. Claimant requested a hearing before an administrative law judge ("ALJ"), and on September 8, 1998, a hearing was held before the ALJ. On November 16, 1998, the ALJ issued a decision denying claimant disability benefits. The Appeals Council declined to grant claimant's request for review of the ALJ's decision. This action resulted in the ALJ's November 16, 1998, decision becoming the final order of the Commissioner of which claimant now seeks review.

### II. *Medical and Testimonial Evidence*

Because it is not disputed, the court does not repeat the medical and testimonial evidence herein, but rather, will discuss relevant portions of the evidence as necessary.

### III. *Scope of Review*

■ This court must affirm the ALJ's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir.1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It does not necessarily mean a preponderance. *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir.1996) (citing *Sor-*

*enson v. Weinberger,* 514 F.2d 1112, 1119 n. 10 (9th Cir.1975)). The Commissioner's findings must be upheld if they are supported by inferences that can be reasonably drawn from record evidence. *See Gallant v. Heckler,* 753 F.2d 1450, 1452–53 (9th Cir.1984). Where evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *See Morgan v. Commissioner of Soc. Sec.,* 169 F.3d 595, 599 (9th Cir.1999).

### IV. *The ALJ's Decision–Making Process*

The claimant has the initial burden of establishing "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

In determining whether a claimant is disabled, the ALJ is required to follow a five-step sequential decision-making process. In step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Claimant does not dispute the ALJ's finding that claimant had not engaged in substantial gainful activity since April 3, 1997. (Tr. 59).

■ In step two, the ALJ must determine whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. § 404.1520(d). If the claimant does not have a "severe" impairment, he is not disabled. Claimant does not contest the ALJ's findings that "[t]he medical evidence establishes that the claimant has an affective disorder, a personality disorder, and a substance addiction disorder in early reported remission," and that these impairments are severe. (Tr. 59–60).

In step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in Appendix 1 to Part 404, Subpart P. 20 C.F.R. § 404, Subpart P, Appendix 1. A claimant who meets one of the listings is disabled. *Id.*

Here, claimant does not dispute the ALJ's finding that claimant's impairments, either alone or in combination, do not meet or equal a listing. (Tr. 60).

■ In step four, the ALJ must determine whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(e). A claimant who can still perform past relevant work is not disabled. *Id.* Here, claimant does not dispute the ALJ's step four finding that claimant is unable to perform his past relevant work as a pharmacy technician, security guard, and industrial janitor. (Tr. 60).

If the claimant establishes that he is unable to perform past relevant work, the burden shifts to the Commissioner in step five to establish that the claimant possesses the residual functional capacity to perform other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. Here, relying on a vocational expert's testimony, the ALJ concluded that claimant is able to make an adjustment to other work which exists in significant numbers in the national economy, including that of assembly worker and packager. (Tr. 60). Claimant contests this finding.

## V. *Discussion*

The legal issues are whether the ALJ's decision is supported by substantial evidence and free of legal error. Claimant argues that the ALJ: (1) improperly rejected claimant's testimony; (2) improperly rejected physician assistant Yoong's opinion; (3) improperly rejected law witness testimony; (4) improperly failed to consider a psychological basis for claimant's alleged pain; and (5) provided the vocational expert with an incomplete hypothetical.

### A. *Claimant's testimony*

In measuring the weight given to the claimant's testimony, the ALJ stated:

It is recognized that subjective symptoms, such as pain, are nonmeasurable, and that the claimant has experienced some such symptoms which have caused him to limit his activities, but the inability to work pain free or symptom free does not necessarily entitle an individual to disability benefits.

The evidence in the record as a whole does not fully support the claimant's allegations of the level of severity and duration of his pain and other symptoms, and indeed discloses a far higher level of functioning than the claimant and his witnesses have described.

(Tr. 55).

■ When evaluating a claimant's testimony, the ALJ must consider the following factors: daily activities; the location, duration, frequency, and intensity of any pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side-effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, for relief of pain or other symptoms; any measures used by the claimant to relieve pain or symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *See* SSR 96–7p. The resolution of conflicts in the testimony is a function solely of the ALJ. *See Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir.1988).

■ An ALJ must provide clear and convincing reasons for rejecting a claimant's testimony if the claimant establishes the existence of an impairment and a causal relationship between the impairment

and some level of symptoms, and there is no evidence of malingering. *See Morgan v. Commissioner of Soc. Sec.,* 169 F.3d 595, 599 (9th Cir.1999).

■ As an initial matter, the ALJ did not fully reject claimant's testimony, but rather, found that his testimony regarding the level of severity and duration of his pain and other symptoms was "not entirely credible" because it was not supported by the medical evidence and the record as a whole. (Tr. 60). Indeed, the ALJ included in the vocational hypothetical some limitations supported by claimant's testimony, including that claimant should avoid contact with the public and have minimal interpersonal contact with co-workers and supervisors). (Tr. 60).[1]

■ To the extent that the ALJ found claimant's testimony not entirely credible, this conclusion is supported by the record and based on proper standards. The ALJ's decision provides several reasons for partially discrediting the claimant's testimony with respect to the severity and duration of pain and symptoms. For example, the ALJ explained:

[C]laimant and his family believed that the claimant's physical and mental problems were caused by Persian Gulf War Syndrome and a related post traumatic stress disorder. His VA and Kaiser physicians ruled out such conditions pursuant to an extensive outpatient workup of the claimant, but they observed that: "the [claimant], his wife, and his mother have difficulty with this conclusion . . . ." [Exhibit omitted]. The claimant's doctors further observed that: "In the past the [claimant] has a history of being worked up for a number of occasions for different complaints. When the etiology is negative for the problem he becomes

very disgruntled with the provider and also will not return for treatment." (Tr. 53).

The ALJ also pointed out that test results were abnormal and indicated that claimant was "consistently overendorsing symptomatology," and the VA neuropsychologist stated that "there is a possibility that, at times, [claimant] has exaggerated or fabricated elements of his history . . . . Psychologically, clearly [claimant] has an agenda . . . . He is capable of being manipulative . . . ." (Tr. 53).

The ALJ further explained that claimant's allegations that he is emotionally unpredictable, experiences severe mood swings, is reclusive, and is very physically violent, are inconsistent with the medical reports that claimant is not a danger to himself or others, and with the fact that claimant has custody of his five and seven year old children, for whom he apparently has no difficulty caring. (Tr. 55).

The ALJ further noted an inconsistency between claimant's testimony that he can use his computer a maximum of only 15 minutes per day, (Tr. 55), and claimant's statements to his treating providers that he spends much of his day on the Internet and most of his leisure time is spent at the computer playing games. (Tr. 56).

The ALJ further noted inconsistencies between his alleged physical and mental condition and his completion of a year's course work in pharmacology, and subsequent employment, (Tr. 55), and his reported time spent reading the Bible and other books, attending church, going to the library, watching television, visiting his mother, regularly exercising, and doing household chores and yard work. (Tr. 56).

---

1. The court notes that the ALJ's references discrediting both the claimant and the claimant's lay witnesses' testimony are not contained in a single portion of the ALJ's decision, but rather, are interspersed throughout the opinion. The opinion as a whole makes clear that these reasons were considered by the ALJ in discrediting the testimony.

*See Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989) ("[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.").

The ALJ further noted that the inconsistency between claimant's statement that he could sit no longer than 25–30 minutes at a time and claimant's perceived ability to sit through the 1 _ hour hearing with only one five-minute break, carried some "slight weight" in reaching the credibility determination. (Tr. 56).

The reasons provided by the ALJ for finding that claimant's testimony regarding the severity and duration of pain and symptoms is not entirely credible are reasonable, *Gallant v. Heckler,* 753 F.2d 1450, 1452–53 (9th Cir.1984), supported by the record, and at least in combination, are adequate to justify the decision to discredit claimant's testimony.[2]

### B. *Lay witness testimony*

■ Claimant argues that the ALJ improperly rejected the testimony of two lay witnesses, claimant's mother and claimant's friend. An ALJ may reject lay witness testimony so long as he provides reasons that are germane to each witness. *See Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir.1996).

■ Here, the ALJ found that, like claimant's testimony, the lay witness testimony was not entirely credible because it

was not fully supported by the medical evidence and the record as a whole. (Tr. 60). The ALJ's decision provides several reasons to find the lay witness testimony not entirely credible.

The ALJ noted the medical report that claimant's family had difficulty with the physician's conclusion that claimant's problems were not caused by Persian Gulf War Syndrome and a related post traumatic stress disorder. (Tr. 53).

Further, the ALJ noted an inconsistency between the testimony of claimant's former wife that she was unable to leave claimant alone with their two young sons for more than about two hours at a time, and claimant's apparent ability, after the divorce, to independently care for his two sons. (Tr. 55).[3]

The ALJ noted a similar inconsistency between claimant's ability to care for his sons and lay witness testimony that claimant falls frequently, has trouble using his hands, performs all activities extremely slowly, and has significant emotional difficulties on a daily basis. (Tr. 55).

The ALJ also stated that the lay witnesses' testimony was not entirely persuasive because

[t]here is no indication that these witnesses were privy to the medical record in this case, thus they were not aware that based on repeated examinations the claimant's treating providers believe that he has remained capable of performing some level of work despite his physical and mental condition; nor were the witnesses aware that ... the claim-

---

**2.** Because the other reasons offered by the ALJ for partially discrediting claimant's testimony provided clear and convincing reasons for partially discrediting claimant's testimony, the court need not address whether the ALJ properly also considered claimant's application for unemployment benefits as discrediting his testimony. (Tr. 57).

**3.** This testimony apparently came in the form of a letter sent to the Social Security Administration. It is unclear whether claimant is challenging the ALJ's discrediting of this letter.

ant himself disclosed a far higher level of functional abilities to his treating providers.

(Tr. 55).

The reasons provided by the ALJ for finding that the lay witnesses' testimony is not entirely credible are reasonable, *Gallant,* 753 F.2d at 1452–53, supported by the record, and at least in combination, are adequate to validly discredit the lay witnesses' testimony.

### C. *Physician assistant Vee S. Yoong's opinion*

■ Claimant argues that the ALJ improperly ignored the opinion of "Dr. Yoong." As an initial matter, the medical report indicates that Young is a physician's assistant, and not a doctor. (Tr. 302). Whereas "acceptable medical sources," such as licensed physicians, are afforded great weight because of their expertise and familiarity with a claimant's medical condition, *see* 20 C.F.R. § 404.1513, the ALJ "may also use evidence from other sources to show the severity of [the] impairment(s) and how it affects [the] ability to work." *Id.*

Claimant does not specify what portion or portions of Yoong's opinion was allegedly ignored by the ALJ. Indeed, the ALJ noted that, "In August, 1998, about three weeks before the hearing in this matter, the claimant's physicians' assistant observed that the claimant was emotionally stable with the proper use of his medications. The physicians' assistant believed that the claimant could work, sitting, standing or walking for up to six hours each within an eight hour work day, and 'As long as he avoids highly stressful situation[s], he can perform well.' " (Tr. 57) (quoting Tr. 719–26). The ALJ also quoted Yoong's statement that, "As far as his medical psychological condition goes, he's able to return to work and I have re-

peatedly advised him to do so .... " (Tr. 53) (quoting Tr. 302).

The ALJ properly evaluated Yoong's opinion.

### D. *Alleged psychological basis for pain*

Claimant argues that the ALJ failed to consider that there may be a psychological basis for claimant's pain. As explained above, the ALJ properly considered claimant's subjective complaints, including his complaints of pain. The ALJ recognized claimant's allegations of pain, limited only to the extent of the credibility of his subjective testimony. Factual allegations about the interaction of mental impairments and physical pain involve medical questions supportable by medical evidence. Claimant has failed to establish that the ALJ improperly disregarded any specific evidence, and the ALJ's decision is supported by the record.

### E. *The vocational hypothetical*

■ If relying upon a vocational expert at step five of the sequential evaluation process, the ALJ must propound a hypothetical question that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations. *See Osenbrock v. Apfel,* 240 F.3d 1157, 1163 (9th Cir. 2001). The ALJ is required to include in his hypothetical only those limitations he finds credible, and supported by the record. *See id.* at 1163–64; *Magallanes v. Bowen,* 881 F.2d 747, 756–57 (9th Cir. 1989).

Here, the ALJ included in his hypothetical all of the limitations he found credible. As discussed above, his credibility determination and weight given to the evidence was proper.

## VI. *Conclusion*

For the foregoing reasons, the Commissioner's decision is affirmed. This proceeding is dismissed.