**Irene M. COOPER, Plaintiff–Appellant,**

**v.**

**Louis M. SULLIVAN, Secretary of Health and Human Services \*, Defendant–Appellee.**

**No. 87–6252.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1988.

Decided Aug. 2, 1989.

---

\* Louis W. Sullivan is substituted for Margaret M. Heckler, former Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1).

Lawrence D. Rohlfing, Santa Fe Springs, Cal., for plaintiff-appellant.

Dennis J. Mulshine, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before PREGERSON, REINHARDT and NOONAN, Circuit Judges.

REINHARDT, Circuit Judge:

Appellant, Irene Cooper, applied for Social Security disability insurance benefits on November 10, 1983, claiming that she has been disabled since November 11, 1980 due to an accident she suffered at work. Her application was denied by the Administrative Law Judge ("ALJ") on January 31, 1985. Mrs. Cooper then timely filed a request for review of the ALJ's decision with the Appeals Council, which denied the request. The ALJ's decision thus became the final decision of the Secretary.

Mrs. Cooper then sought review in the United States District Court for the Central District of California. Both parties filed motions for summary judgment. The district court granted judgment in favor of the Secretary of Health and Human Services and entered its order on June 18, 1987. This appeal timely followed. Mrs. Cooper

contends that the Secretary's decision to deny benefits was not supported by substantial evidence and that the ALJ committed reversible legal error by failing to apply the Medical–Vocational Guidelines ("the grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2. We agree.

## STATEMENT OF FACTS

Mrs. Cooper is currently 62 years old, has a high school education and previously worked as a stock clerk in a women's retail clothing store. This work included tagging merchandise, filling out return slips, pushing and pulling trolleys which often carried loads in excess of 100 pounds, and frequent lifting and carrying of cartons which weighed between twenty and fifty pounds. Under the Secretary's regulations, this work requires a medium level of exertion.[1]

Mrs. Cooper has been unable to work since November 11, 1980, when she fell at work, injuring her back and both of her wrists, and fracturing her right forearm. At the time of the accident, Mrs. Cooper was 53 years old.

Immediately after the accident, Mrs. Cooper complained of pain in her left wrist, her right wrist and hand, and her lower back. These subjective complaints of pain were consistent with the objective medical evidence, although one doctor opined that her subjective complaints were not "well substantiated". In a disability rating report dated December 2, 1981, Dr. William S. Reiter, Mrs. Cooper's treating physician, found that she had a decreased range of motion in her left wrist and elbow, and had a fifty percent (50%) loss of lateral bending, rotation and flexion of the lumbar spine.[2] Dr. Reiter also found osteoarthritic changes in multiple levels and a lumbariza-

tion of the first vertebrae of the sacrum. He recommended significant work restrictions. He stated that Mrs. Cooper should not perform any forceful, repetitive gripping or twisting motions with either hand, nor any heavy lifting activities requiring forceful gripping. One year later, Dr. Reiter also recommended that Mrs. Cooper avoid repetitive, forceful flexion and extension motions of her left elbow and wrist. At this time, he found her condition to be permanent and stationary, "because she has had full benefit of orthopaedic management."

At the hearing before the ALJ on her claim, Mrs. Cooper testified as to her physical condition and abilities. She testified that she still suffered pain from her wrist injuries. The pain, which was triggered by lifting, starts in her wrists and radiates to her elbows. She further testified that she experienced frequent pain and stiffness in her fingers during the morning and evening, and also when she lifted objects. She also testified that she was unable to lift objects heavier than five pounds, and even has trouble gripping pencils for writing.

Following Mrs. Cooper's testimony, the Secretary called Dr. Sidney Walter, a vocational expert, to testify. He observed that, given the impairments listed by the ALJ, Mrs. Cooper was not capable of returning to her past work as a stock clerk.[3] He concluded, however, that, considering those impairments, and her age, education, and work experience[4], Mrs. Cooper was not disabled. He testified that several jobs in the local area were available to Mrs. Cooper, including crossing guard, self service station operator and cashier, and gate tender. He noted that his conclusion that

---

**1.** 20 C.F.R. § 1567.967(c) (1988) defines medium work as follows: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

**2.** Mrs. Cooper was also examined by Dr. Allen Salick and Dr. Thomas Smith. However, since the ALJ's decision is apparently based on Dr. Reiter's observations and conclusions alone, and appellant concedes that such a basis is proper, we will not discuss their observations and conclusions.

**3.** This conclusion is supported by Dr. Reiter's medical reports and is not contested by the Secretary.

**4.** Dr. Walter testified, and the ALJ found, that Mrs. Cooper's previous work experience should be classified as unskilled. 20 C.F.R. § 404.1568(a) (1988). Thus, she has no acquired work skills which are transferable to either skilled or semi-skilled work activities.

Mrs. Cooper could engage in substantial gainful activity was the same regardless of whether the time period considered was pre- or post-age 55, "based on dexterit[y] and movement and job activities alone."

On January 31, 1985 the ALJ issued a decision finding Mrs. Cooper not disabled. Because he determined that Mrs. Cooper's impairments were only nonexertional, the ALJ concluded that the grids were inapplicable and need not be used in deciding whether Mrs. Cooper was disabled. As a result, his conclusion that Mrs. Cooper was not disabled was dictated by the testimony of Dr. Walter, the vocational expert. We reverse.

## ANALYSIS

### I

To qualify for disability benefits, Mrs. Cooper must establish that a medically determinable physical impairment prevents her from engaging in substantial gainful activity and that the impairment is expected to last for a continuous 12 month period. *Cotton v. Bowen,* 799 F.2d 1403, 1405 (9th Cir.1986); *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir.1985); 42 U.S.C. § 423(d)(1)(A). However, because Mrs. Cooper has established that her impairments prevent her from performing her previous occupation, the burden shifts to the Secretary to demonstrate that she can perform other types of work that exist in the national economy, given her residual functional capacity[5], age, education and work experience. *Cotton,* 799 F.2d at 1405; 20 C.F.R. §§ 404.-1504(a); 404.1520(f), 404.1560–404.1568 (1988).

5. A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations. 20 C.F.R. § 404.1545 (1988).

6. Exertional limitations are strength-related limitations. *See, e.g.,* 20 C.F.R. § 404.1567 (1988) (defining five categories of residual functional capacity in terms of strength limitations).

7. Nonexertional limitations are non-strength related limitations. These include mental, senso-

In determining whether a claimant is disabled, the ALJ will usually refer to the grids, which were adopted by the Secretary in 1978. The grids correlate a claimant's age, education, previous work experience, and residual functional capacity to direct a finding of either disabled or not disabled. The Secretary adopted the grids to improve the efficiency of the application process and to promote uniform decision-making. *Heckler v. Campbell,* 462 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

The ALJ must apply the grids if a claimant suffers only from an exertional impairment[6]. 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 200.00(a) & (e) (1988). In such cases, the rule is simple: the grids provide the answer. Where the grids dictate a finding of disability, the claimant is eligible for benefits; where the grids indicate that the claimant is not disabled, benefits may not be awarded. However, where a claimant suffers solely from a nonexertional impairment[7], the grids do not resolve the disability question, *id.* at § 200.00(e)(1); other testimony is required. In cases where the claimant suffers from both exertional and nonexertional impairments, the situation is more complicated. First, the grids must be consulted to determine whether a finding of disability can be based on the exertional impairments alone. *Id.* at § 200.00(e)(2). If so, then benefits must be awarded. However, if the exertional impairments alone are insufficient to direct a conclusion of disability, then further evidence and analysis are required. In such cases, the ALJ must use the grids as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id.*[8] In short,

ry, postural, manipulative, and environmental limitations. *Desrosiers v. Secretary of Health & Human Services,* 846 F.2d 573, 579 (9th Cir. 1988) (Pregerson, J. concurring); Appendix 2, § 200.00(e).

8. This proposition is well-established in the case law, *see, e.g., Desrosiers,* 846 F.2d at 577; *Razey v. Heckler,* 785 F.2d 1426, 1430 (9th Cir.1986); *Kail v. Heckler,* 722 F.2d 1496, 1498 (9th Cir. 1984); *Blacknall v. Heckler,* 721 F.2d 1179, 1180–81 (9th Cir.1983), and in the Secretary's

the grids serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment.

The ALJ found that Mrs. Cooper's limitations were manipulative and thus were solely nonexertional. In reaching his conclusion that Mrs. Cooper was not disabled, he did not utilize the grids as "a framework" or otherwise. Mrs. Cooper contends that the ALJ erred in concluding that her limitations are solely nonexertional. She contends that her limitations are both exertional and nonexertional, that application of the grids is mandatory, and that under the grids she is disabled. We will consider each of these contentions in turn.

## II

■ The Secretary has defined "exertional activity" as primarily involving the strength requirements of sitting, standing, walking, lifting, carrying, pushing, and pulling. Soc. Sec. Ruling 83–10. Thus, an exertional impairment is one that directly affects the claimant's strength. In general, a manipulative impairment will be considered to be nonexertional. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e) (1988). This is so because a manipulative impairment does not usually impair an individual's strength, the hallmark of an exertional limitation. However, to the extent that a claimant's manipulative limitation does adversely affect his strength, that limitation is exertional in nature. *Cf. Desrosiers*, 846 F.2d at 579 (pain is an exertional limitation when, for example, claimant's neurological sensations of pain prevent him from lifting an object) (Pregerson, J., concurring). Here, Mrs. Cooper's manipulative impairment, at least in part, di-

rectly affects her ability to lift objects. Dr. Reiter specifically concluded that Mrs. Cooper could not perform heavy lifting activities because of her impairments. This restriction was thus defined explicitly in exertional terms. Under these circumstances, the restrictions imposed upon Mrs. Cooper, to not perform any forceful, repetitive gripping or twisting motions with either hand, nor engage in any heavy lifting activities requiring forceful gripping, are the result of both exertional and nonexertional impairments.[9] Accordingly, the ALJ's conclusion that Mrs. Cooper suffered only from nonexertional impairments is not supported by substantial evidence.

## III

■ We turn now to Mrs. Cooper's next contention, namely that the ALJ erred in not using the grids to determine whether she is disabled. The Secretary contends that even if Mrs. Cooper's limitations are both exertional and nonexertional, application of the grids, even as a framework or starting point, would be discretionary. We disagree. First, we note that the Secretary's position is refuted by his own rules. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2) (1988). Second, our cases are to the contrary. See note 8, *supra; see also Kellar v. Bowen*, 848 F.2d 121, 124 (9th Cir.1988). Third, the cases cited by the Secretary, *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Desrosiers*, 846 F.2d at 577; *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986), are inapplicable. The Secretary's cases hold only that he may not rely solely on the grids to *deny* benefits when additional impairments detract from a claimant's ability to work.[10]

own rulings. *See, e.g.,* Social Security Ruling 86–8.

**9.** We note that at oral argument the Secretary often referred to Mrs. Cooper's impairments as being "primarily nonexertional." While on direct questioning the Secretary stopped just short of conceding that Mrs. Cooper suffered from a combination of exertional and nonexertional impairments, the Secretary's regulations regarding application of the grids to a claimant with both exertional and nonexertional impairments

do not require that the exertional limitation be the primary cause of the claimant's limitations in order for the grids to be used in making the disability determination. *Compare* § 200.00(e)(1) *with* § 200.00(e)(2).

**10.** For example, if Mrs. Cooper had the residual functional capacity to perform medium work, and suffered from no or minimal nonexertional impairments (i.e., if she were capable of doing the full range of medium work), then the grids would mandate a finding that she was not dis-

In the case before us, Dr. Walter, a vocational expert and the Secretary's witness, testified that, given her limitations, Mrs. Cooper was only capable of performing sedentary [11] or light [12] work; Mrs. Cooper is currently of advanced age (55 and over), has a high school education, and is an unskilled worker. In light of Dr. Walter's testimony, application of the grids would direct a conclusion that Mrs. Cooper is disabled. 20 C.F.R. Part 404, Subpart P, Appendix 2, rules 201.04 & 202.04 (1988). Not surprisingly, the Secretary contends that the ALJ was free to ignore the result which application of the grids would require and could instead rely exclusively on that part of the testimony of the vocational expert that relates to the availability of jobs in the marketplace. In contrast, Mrs. Cooper contends that once the testimony established the level of work that she was able to perform, the ALJ was bound by the favorable result dictated by the grids. We agree with Mrs. Cooper.

As we have already discussed, where application of the grids directs a finding of disability, that finding must be accepted by the Secretary. That is so whether the impairment is exertional or results from a combination of exertional and nonexertional limitations. Here, the testimony of the Secretary's own witness establishes that the combination of Mrs. Cooper's exertional and nonexertional impairments limits her to at most light work. Applying the grids to Mrs. Cooper's case results in a finding of disability. Thus, we need not go beyond the grids in order to conclude that Mrs. Cooper is eligible for benefits. Accordingly, the ALJ erred by failing to apply the grids and to conclude, as a result, that Mrs. Cooper is disabled.

▉ Moreover, we note that the ALJ erred when he disregarded the assumptions which underlie the grids. Based on the vocational expert's testimony, the ALJ concluded that Mrs. Cooper was not disabled because "[c]onsidering the types of work which the claimant is still functionally capable of performing in combination with her age, education and work experience, *she can be expected to make a vocational adjustment to work which exists in significant numbers in the national economy."* (emphasis added). However, the regulations stress that the most difficult problem that a claimant such as Mrs. Cooper faces is that of adapting to a new job. Indeed, that is the reason that the grids direct the conclusion that claimants like Mrs. Cooper are disabled. "[F]or individuals of advanced age [*i.e.*, age 55 or older] who can no longer perform vocationally relevant past work and who have a history of unskilled work experience ... the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled". *Id.* at § 202.00(c). Just as the ALJ may not disregard the

abled. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 203.14 (1988). *See, e.g., Razey v. Heckler,* 785 F.2d 1426, 1430 (9th Cir.1986) (use of grids appropriate where claimant's nonexertional limitations did not affect claimant's residual functional capacity). However, if she were not capable of doing the full range of medium work because of a nonexertional impairment, then the ALJ would not be allowed to rely solely on the grids to direct a finding of not disabled. *See, e.g., Bellamy v. Secretary of Health and Human Services,* 755 F.2d 1380, 1383 (9th Cir. 1985); *Jones v. Heckler,* 760 F.2d 993, 998 (9th Cir.1985).

11. 20 C.F.R. § 416.967(a) (1988) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

12. 20 C.F.R. § 416.967(b) (1988) defines light work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or pulling of arm or leg controls. To be considered capable of performing a full range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

grids' conclusion of disability, he also may not disregard the assumptions which underlie the grids. Certainly, nothing in the Secretary's own regulations would support the opposite conclusion. *See, e.g.,* 20 C.F. R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2) ("full consideration must be given to all of the relevant facts of the case *in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations*") (emphasis added).[13]

 Our discussion has focused on the period during which Mrs. Cooper was of advanced age, *i.e.,* age 55 or older. Mrs. Cooper has also requested benefits for the period when she was 53 to 54 years old. During that period she fell within a separate category, "closely approaching advanced age". The regulations regarding the work adaptability of an individual closely approaching advanced age are slightly different than those for an individual who has reached advanced age. An individual who is closely approaching advanced age and had the same limitations as Mrs. Cooper would be considered disabled if she were limited to sedentary work, § 201.00(g) and Rule 201.12, while that individual would not be disabled if she could perform a full range of light work. § 202.00(b) and Rule 202.13. The record in this case does not make clear whether Mrs. Cooper can perform the full range of light work. Thus, we cannot determine whether she would qualify for disability benefits when she was 53 to 54 years old. Accordingly, we remand the case for further administrative proceedings for this earlier period.[14]

 Accordingly, we direct that this case be remanded to the district court with instructions that it be returned to the Secretary for the award of disability benefits for the period after Mrs. Cooper reached the age of 55 and for further administrative proceedings for the pre-age 55 period.

REVERSED and REMANDED

---

**13.** There is potentially another serious problem with the ALJ's decision in this case. Mrs. Cooper testified as to the pain she suffered. However, this additional nonexertional limitation was not a part of the hypothetical question posed by the ALJ to the expert. A vocational expert's testimony can not constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all of the claimant's limitations, including pain. *Varney v. Secretary of Health & Human Services,* 846 F.2d 581, 585 (9th Cir. 1988). In attempting to justify his discounting of Mrs. Cooper's pain testimony, the ALJ merely listed a variety of factors, without attempting to explain in any way how those factors affected Mrs. Cooper's credibility. We have considerable doubt that this "explanation" rises to the

level we require. *See, e.g., Varney v. Secretary of Health & Human Services,* 859 F.2d 1396, 1399 (9th Cir.1988) (ALJ must make "specific and justifiable finding[s]"); *Gamer v. Secretary of Health & Human Services,* 815 F.2d 1275, 1279 (9th Cir.1987); *Bellamy v. Secretary of Health & Human Services,* 755 F.2d 1380, 1382 (9th Cir.1985) (ALJ must "convincingly justify his rejection" of the claimant's excess pain testimony).

**14.** The Secretary has argued in his motion for reconsideration that Mrs. Cooper's request for disability benefits was not effective for the period before she reached the age of 55. Because the Secretary did not raise this issue below or in its brief, we decline to consider it now.