46 F.3d 1141
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Don HALPER, Plaintiff-Appellant,
v.
Donna SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-55335.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Oct. 3, 1994.
Decided: Jan. 13, 1995.
 
 1
 Before: CHIEF JUDGE WALLACE and REINHARDT, Circuit Judges; TANNER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 I. INTRODUCTION
 
 3
 Claimant Don Halper sought review of a denial of disability benefits. Following three administrative law hearings, Administrative Law Judge Lana H. Parke found claimant not disabled, and therefore not entitled to disability insurance benefits. The Appeals Council affirmed. Claimant appealed to the district court. The district court granted summary judgment in favor of the Secretary. Halper timely appealed. The district court had jurisdiction pursuant to 42 U.S.C. Sec.405(g). We have jurisdiction pursuant to 28 U.S.C. Sec.1291.
 
 II. STANDARD OF REVIEW
 
 4
 The decision of the district court granting summary judgment is reviewable de novo. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). In reviewing the denial of disability claim, this court must affirm if the Secretary's findings of fact are supported by substantial evidence, and the Secretary applied the correct legal standards. Gonzales v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). Substantial evidence means "'more than a mere scintilla', but 'less than a preponderance."' Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (citations omitted). We must consider the record as a whole, weighing both the evidence that supports and detracts from the Secretary's conclusion. Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1278 (9th Cir. 1987).
 
 III. DISCUSSION
 
 5
 To qualify for disability benefits, Halper must show that a medically determinable physical impairment prevents him from engaging in substantial gainful activity and that the impairment is expected to last for a continuous 12-month period. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986); 42 U.S.C. Sec.423(d)(1)(A); 20 C.F.R. Sec.404.1505(a). Halper bears the burden of proving he is disabled. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).
 
 
 6
 A claimant makes a prima facie case of disability if he can prove his impairments render him incapable of performing his previous occupation. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984). The burden then shifts to the Secretary to show that claimant can perform "other work" that exists in significant numbers in the national economy. Id.
 
 A. The Medical Vocational Grids
 
 7
 Halper argues on appeal that because his impairment is solely non-exertional, the medical-vocational guidelines in Appendix 2 to 20 C.F.R. Part 404, Subpart P (commonly known as the "grids"), cannot be utilized as a "framework" in determining disability.[1] Arguments not raised before the district court may not be raised on appeal absent exceptional circumstances. Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988).[2] Halper has made no showing of exceptional circumstances. Accordingly, we hold that claimant has waived this issue on appeal.
 
 
 8
 Where a claimant suffers both exertional and non-exertional impairments, the grids must be consulted to determine if a finding of disability is warranted based solely on the exertional impairments. If the grids do not direct a conclusion of disability, then the grids are only a "framework" for determining how much the individual's work capability is further diminished by the nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). See also Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984) (grids are a "framework" for determining disability when nonexertional, environmental limitations restrict claimant's ability to tolerate certain work settings).[3] In such a case, the Secretary is required to call a vocational expert to prove the existence of jobs in the national economy that claimant can perform. DesRosiers, 846 F.2d at 579.
 
 B. Vocational Factors
 1. Age, Education and Work Experience
 
 9
 Halper argues that the ALJ failed to adequately consider his age, education, work experience and residual functional capacity in determining whether he can perform work other than his previous work.
 
 
 10
 The ALJ found that claimant was a person closely approaching advanced age at his alleged onset of disability, with a law degree, who had been a criminal trial attorney for more than 20 years.[4] Both the ALJ's decision and the hypothetical posed to the vocational expert contain references to Halper's age, education and work experience. The ALJ adequately considered the vocational factors.
 
 
 11
 2. Residual Functional Capacity to do Medium Work
 
 
 12
 Because the ALJ found that Halper could not perform his past work, we must determine whether work exists in significant numbers that Halper can do. Gallant, 753 F.2d at 1452. Halper claims the Secretary erred in finding that he had the residual functional capacity to do medium work.[5]
 
 
 13
 Residual Functional Capacity ("RFC") is what claimant can still do despite his physical, mental, nonexertional and other limitations. 20 C.F.R. Sec.404.1545 (1988); Cooper, 880 F.2d at 1155 n. 5.
 
 
 14
 The ALJ concluded that Halper could not perform his past work, but could perform work at a medium level.[6] The ALJ considered Halper's chronic pulmonary obstructive disorder in determining that Halper could not be exposed to dust, fumes, or smoke. Halper's testimony that he can lift only 10 pounds is the only evidence of his "lifting" capacity. The ALJ found Halper's testimony regarding his inability to walk, sit, lift, and carry "not credible." The ALJ stated that "wide and varied activities of daily living belie [claimant's] inability to perform all basic work-related activities such as standing, walking, sitting, lifting, and carrying."[7]
 
 
 15
 An ALJ can disregard a claimant's self-serving statements when they are unsupported by objective findings. Gallant, 753 F.2d at 1455. There was no medical evidence that Halper could not perform the lifting requirements of medium work. What the medical evidence does show is that Halper suffered from a hernia, which had healed, and tendinitis, which had resolved itself by July 1988.
 
 
 16
 Considering the evidence as a whole, we find that the Secretary's conclusion that Halper can perform medium work is supported by substantial evidence.
 
 
 17
 Having determined claimant's physical exertional level, the Secretary must determine how much claimant's residual functional capacity is further diminished by his mental impairment. DesRosiers, 846 F.2d at 577.
 
 
 18
 In rating the severity of his impairments, Halper's functional limitations fell into the "slight to moderate" categories. His mental disorder has been stabilized on lithium since March 1988, and both of Halper's VA treating physicians reported that Halper is capable of working.
 
 
 19
 C. Residual Functional Capacity Assessment Form
 
 
 20
 Halper claims that the ALJ erred by not completing a Residual Functional Capacity Assessment Form and appending it to her decision.
 
 
 21
 Social Security regulation 85-15 requires that the ALJ make an individualized assessment of claimant's ability to work at a particular job. Completion of an "Evaluation of Mental Impairments" is required by 20 C.F.R. Sec.404.1520a (1987). Section 404.1520a(d) requires preparation of a "standard document" called a "Psychiatric Review Technique Form." Woody v. Secretary of Health and Human Services, 859 F.2d 1156, 1159 (3rd Cir. 1988).
 
 
 22
 The ALJ completed the form, and appended it to her decision.[8] The ALJ must discuss in her opinion the evidence she considered in reaching the conclusions expressed on the form. Id. See Sec.404.1520a(c)(4). There is competent evidence in the record to support the ALJ's conclusions, and the evidence considered is reflected in her decision.
 
 D. Transferability of Skills
 
 23
 The ALJ determined that the issue of transferability of skills is moot in this case. We agree.
 
 
 24
 Section 404.1563(c) of 20 C.F.R. provides that for persons approaching advanced age (50-54), who have a severe impairment and limited work experience, age may seriously affect their ability to adjust to a significant number of jobs in the community. There is no indication that claimant has limited work experience.
 
 
 25
 Section 1563(d) provides that persons of advanced age (55 and over), who have a severe impairment and cannot do medium work, may not be able to work unless they have skills transferable to less demanding jobs. Because claimant can do medium work, transferability of skills is irrelevant.
 
 
 26
 E. Hypothetical Posed to the Vocational Expert
 
 
 27
 A hypothetical posed to a vocational expert must take into account all of claimant's impairments. Gamer, 815 F.2d at 1279.
 
 
 28
 The Secretary considered all of Halper's limitations, evaluating Halper's vocational abilities in light of his mental disorder.[9] The hypothetical posed to the vocational expert set forth the nature of Halper's past work, and examined the differences between Halper's prior work and the available semi-repetitive, unskilled jobs identified by the vocational expert. The ALJ also considered the nature of Halper's stress (bipolar disorder), and the circumstances and job attributes that trigger it (complex work and confrontational interactions). The vocational expert then identified jobs which claimant could do despite his limitations. The vocational expert identified the medium-exertion level jobs of stock clerk, order filler, and packer. The vocational expert testified that there existed 18,000 total jobs in the local economy which Halper could perform. The ALJ's conclusion is based on the medical evidence in the record. The vocational expert's testimony constitutes substantial evidence to support the ALJ's findings.
 
 
 29
 AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 30
 I agree with the majority that the claimant retained the physical capacity to perform medium work. I disagree, however, with its conclusion regarding Halper's mental impairment. There were two errors in the ALJ's consideration of the claimant's bipolar affective disorder, each of which independently requires reversal. First, the ALJ failed to complete a mental residual functional capacity assessment document, as required by 20 C.F.R. Sec. 404.1520a(3) & (4), setting forth the claimant's specific mental functional limitations. Second, the ALJ's hypothetical question to the vocational expert, on which her decision rested, did not include all the claimant's functional limitations. I would reverse the Secretary's decision with instructions that Halper be found disabled.
 
 
 31
 Consideration of Mental Residual Functional Capacity
 
 
 32
 The first problem with the ALJ's decision is her failure to append to her decision the mental residual functional capacity assessment document, as required by 20 C.F.R. Sec. 404.1520a ("Evaluation of mental impairments"). If a claimant has a psychiatric disorder, the ALJ must first determine whether his condition meets or equals a listed mental disorder. 20 C.F.R. Sec. 1520a(c). Claimants who have a listed impairment are automatically considered "disabled." 20 C.F.R. Sec. 1520(d). If the condition does not meet or equal any listed impairment, the Secretary must consider whether the limitations on functional capacity nevertheless prevent the claimant from engaging in his past relevant work or in any other kind of work. 20 C.F.R. Secs. 1520(e) & (f), 1520a(c)(3).
 
 
 33
 As the majority points out, the ALJ did complete the "Psychiatric Review Technique" form, finding that Halper's condition did not meet or equal the listings. But Halper does not contest the ALJ's determination that his condition does not meet or equal the listings. The ALJ's error was her failure to proceed to the next step of the disability determination procedure. The ALJ did not complete the "Mental Residual Functional Capacity Assessment" required by regulation:
 
 
 34
 If you have a severe mental impairment(s) but the impairment(s) neither meets nor equals the listings, we must do a residual functional assessment ....
 
 
 35
 20 C.F.R. Sec. 404.1520a(c)(3). The regulations go on to require that the "standard document outlining the steps of this procedure" be completed at each level including the ALJ hearing. The reference to the "steps of the procedure" can only referto the five-step sequential evaluation process that requires the Secretary to determine whether the claimant's condition meets or equals the listings and, if it does not, to then determine whether his residual functional capacity prevents him from performing his past work or any relevant work. The ALJ must append a copy of the standard document to the decision in all cases involving mental disorders. 20 C.F.R. Sec. 404.1520a(d) (2).
 
 
 36
 In this case, the ALJ did not append the "Mental Residual Functional Capacity Assessment" required by regulation. Even though the Psychiatric Review Technique form indicates "RFC Assessment Necessary," the ALJ did not complete one. The majority opinion cites Woody v. Secretary of Health and Human Services, 859 F.2d 1156, 1159 (3rd Cir. 1988), in support of the proposition that the Secretary need only complete the Psychiatric Review Technique form indicating whether the claimant meets or equals the listings. In Woody, however, the court found that the claimant's condition was disabling because he met the listings, thus obviating the need to consider whether his mental residual functional capacity allowed him to perform his past work or any other job. Id. at 1161. The court did not address the question whether completion of the Mental Residual Functional Capacity Assessment form is required if the claimant does not meet or equal the listings. Moreover, the Woody court noted in dicta that even if the ALJ's finding that the claimant did not meet the listings had been correct, the ALJ's decision could not have been sustained because he failed to make sufficiently specific findings regarding the claimant's residual functional capacity. Id. at 1162. Similarly, in Halper's case, the ALJ's decision should be reversed because of her failure to make the detailed findings that the Mental Residual Functional Capacity Assessment form requires.
 
 
 37
 In a footnote, the majority notes that a residual functional capacity assessment was completed on November 4, 1987 -- more than three years before the Administrative Law Judge's decision. This hardly cures the ALJ's error in failing to assess Halper's mental residual functional capacity at the time of his second hearing. Halper's condition may well have changed during the intervening period. The ALJ is required to conduct a de novo review of the evidence and to incorporate her independent findings and conclusions in her decision. 20 C.F.R. Sec. 404.1520a(c)(4). The ALJ's failure to do so requires that we remand.
 
 
 38
 Hypothetical Question Posed to Vocational Expert
 
 
 39
 The ALJ's second error was her failure to include all the claimant's functional restrictions in the hypothetical question posed to the vocational expert. The ALJ acknowledged that Halper's manic-depressive disorder renders him unable to tolerate stress. Yet she based her decision on the mistaken assumption that only complicated or confrontational work would cause stress. In doing so, the ALJ overlooked the testimony of the vocational expert, who stated that it would be stressful for someone of Halper's age to perform an unskilled, semi-repetitive job after working as a trial attorney all his life.
 
 
 40
 If the claimant is unable to perform his past work and has significant nonexertional limitations, then the testimony of a vocational expert is required to demonstrate the existence of specific jobs that the claimant is capable of performing despite these restrictions. Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988). In this case, the claimant demonstrated his inability to perform past work. As the Appeals Council recognized when it remanded Halper's case after the first ALJ decision, the Secretary was required to call a vocational expert to demonstrate the existence of specific medium-exertion level jobs that the claimant could perform despite his impairment. Without the vocational expert's response to a complete hypothetical, the Secretary could not meet her burden. See Gonzalez v. Sullivan, 914 F.2d 1197, 1202 (9th Cir. 1990). The ALJ may rely on testimony from the vocational expert only if the hypothetical question to which the expert responded includes all the claimant's limitations. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988); Cooper v. Sullivan, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989).
 
 
 41
 In this case, the ALJ's conclusion that Halper was capable of returning to work was based on the vocational expert's response to a hypothetical that erroneously failed to mention all the claimant's limitations. At Halper's hearing, the ALJ acknowledged that Halper is not able to handle work-related stress. Nevertheless, the hypothetical that the ALJ posed to the vocational expert omitted the inability to handle stress. The ALJ asked only whether someone who was unable to perform complex or confrontational tasks would be capable of working. The vocational expert responded that a claimant meeting the ALJ's description could work as an stock clerk, order filler, or packer.
 
 
 42
 The problem with the ALJ's hypothetical question is that it ignores the fact that unskilled, semi-repetitive work can induce stress, especially in someone who has engaged in a different kind of work all his life. See Social Security Ruling 85-15. When on cross-examination the vocational expert was asked whether someone of the claimant's vocational background would find it stressful to perform medium, unskilled work, the vocational expert answered in the affirmative, stating that it would be stressful for someone who had been employed for many years as an attorney to work as a stock clerk, order filler, or packer. In view of Halper's undisputed inability to handle stress, the vocational expert's testimony that these jobs would induce stress requires that he be found disabled.
 
 
 43
 The Secretary's error is not rectified by the general statement of Halper's treating V.A. physicians that, in their opinion, he was capable of employment. The ALJ found that Halper is incapable of performing his past relevant work, thus shifting the burden to the Secretary to identify specific jobs that Halper could perform despite his impairment. Polny, 663 F.2d at 663-64 (9th Cir. 1988). Upon remanding Halper's case after the ALJ's first decision, the Appeals Council acknowledged that the Medical-Vocational Guidelines ("the Grids") dictate that Halper be found disabled unless he is capable of performing medium-exertion level work. Absent other reliable evidence of the claimant's ability to perform specific jobs in this exertional range, the testimony of a vocational expert is required. Gonzalez, 914 F.2d at 1202. Here, the Appeals Council recognized that the testimony of a vocational expert was required to determine whether there were any specific positions that the claimant could perform given his residual functional capacity. It is apparent, therefore, that the treating physician's general statement does not suffice to meet the Secretary's burden of demonstrating the existence of specific medium-exertion level jobs that Halper can perform.
 
 
 44
 Although the ALJ recognized that Halper was unable to handle stress, her decision erroneously assumes that uncomplicated, nonconfrontational jobs would not induce stress. This assumption is directly contrary to the vocational expert's testimony that medium, unskilled jobs would induce stress in someone of Halper's vocational background. In light of the vocational expert's testimony, Halper must be found "disabled." I would reverse the Secretary's decision and award benefits. See Erickson v. Shalala, 9 F.3d 813, 819 (9th Cir. 1993). At the very least, we should remand to the Secretary with instructions to make detailed findings regarding mental residual functional capacity, as required by 20 C.F.R. Sec. 404.1520a, and to include all these findings in a hypothetical question posed to the vocational expert at a new hearing.
 
 
 45
 I dissent.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Exertional limitations are strength-related limitations. See e.g., 20 C.F.R. Sec.404.1567. Non-exertional limitations are non-strength related limitations. DesRosiers v. Secretary of HHS, 846 F.2d 573, 579 (9th Cir. 1988) (Pregerson, J., concurring)
 
 
 [2]
 Both before the ALJ and the district court, Halper raised claims of exertional and nonexertional impairments
 
 
 [3]
 Inability to tolerate dust or fumes is one example given in the guidelines of an environmental restriction not factored into the Rules. 20 C.F.R. Part 404, Subpart P, App. 2 Sec.200.00(e)
 
 
 [4]
 Halper was 54 years of age when he applied for disability benefits
 
 
 [5]
 It is appropriate to consider residual functional capacity when a claimant's impairment does not meet or equal the Listing of Impairments. 20 C.F.R. Sec.404.1520a(c)
 
 
 [6]
 Under the grids, medium work requires lifting up to 50 pounds at a time, with frequent lifting and carrying of up to 25 pounds. 20 C.F.R. Sec. 404.1567(c)
 
 
 [7]
 The ALJ relied on evidence of Halper's extensive daily activities, showing that Halper walked up to 20 miles per day, visited with friends, did his own shopping and laundry and worked out at a gym up until five months prior to the ALJ's decision
 
 
 [8]
 A Residual Functional Capacity Assessment form was completed by Dr. R.B. Liebman on November 4, 1987, and is a part of the administrative record
 
 
 [9]
 The ALJ told the vocational expert to assume that Halper could perform medium work, but because of some significant emotional problems, the work could be detailed, but not complex, and must be nonconfrontational. The ALJ's hypothetical included Halper's limitation regarding excessive dust, fumes and smoke. Cf. Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986) (upholding the use of a hypothetical question that set out claimant's specific limitations)