Jennifer HOANG DO, Plaintiff,

v.

Michael J. ASTRUE Commissioner of
Social Security Administration,
Defendant.

Case No. ED CV 10–0154 JCG.

United States District Court,
C.D. California.

Jan. 21, 2011.

William M. Kuntz, Riverside, CA, for Plaintiff.

Assistant U.S. Attorney LA–CV, Office of U.S. Attorney, Los Angeles, CA, Assis-

tant U.S. Attorney LA–SSA, Office of the General Counsel for Social Security Adm., Paul H. Sachelari, SAUSA–Office of U.S. Attorney, U.S. Department of Justice, San Francisco, CA, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

JAY C. GANDHI, United States Magistrate Judge.

### I.

### *INTRODUCTION AND SUMMARY*

On January 29, 2010, plaintiff Jennifer Hoang Do ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). [Docket No. 1.] On April 5, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 10, 11.]

On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge. [Docket No. 12.] Both Plaintiff and Defendant subsequently consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 20, 21.]

Pursuant to a February 5, 2010 case management order, Plaintiff submitted a motion for summary judgment or remand ("Plaintiff's Motion") on June 3, 2010. [Docket No. 18.] On July 7, 2010, Defendant submitted his motion for summary judgment ("Defendant's Motion"). [Docket No. 19.] The Court deems the matter suitable for adjudication without oral argument.

In sum, having carefully studied, *inter alia,* the parties' papers and the administrative record, the Court concludes that, as detailed herein, the Administrate Law Judge inappropriately discounted Plaintiff's subjective complaints and thus remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

### II.

### *PERTINENT FACTUAL AND*
### *PROCEDURAL BACKGROUND*

Plaintiff, who was 27 years of age on the date of her administrative hearing, has completed high school and two years of college. (*See* Administrative Record ("AR") at 16, 20, 91, 109.) Her past relevant work includes employment as a tutor, library page, receptionist, and fast food cashier. (*Id.* at 14.)

Plaintiff protectively filed for DIB and SSI on October 22, 2007, alleging that she has been disabled since November 15, 2005 due to a small cerebellum and weak muscles affecting mobility and balance. (AR at 43, 91–93, 94–97, 100.) Plaintiff's applications were denied initially and upon reconsideration, after which she filed a timely request for a hearing. (*Id.* at 34, 35, 36, 37, 38–42, 43–47, 48–49.)

On June 22, 2009, Plaintiff, proceeding *pro se,* appeared and testified at a hearing before an ALJ. (AR at 16, 18–28.) The ALJ also heard testimony from Plaintiff's mother Na Nguyen. (*Id.* at 29–32.)

On September 11, 2009, the ALJ denied Plaintiff's request for benefits. (AR at 10–15.) Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. (*Id.* at 12.)

At step two, the ALJ found that Plaintiff suffers from a severe impairment of the

"central nervous system." (AR at 12 (emphasis omitted).)

At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairment, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations.[1] (AR at 12.)

The ALJ then assessed Plaintiff's residual functional capacity [2] ("RFC") and determined that she is limited to sedentary work. (AR at 12.) The ALJ also found that with respect to "standing and walking," Plaintiff "is limited to 2 hours of an 8–hour workday." (*Id.* (emphasis omitted).)

The ALJ found, at step four, that Plaintiff lacks the ability to perform her past relevant work. (AR at 14.)

At step five, based on Plaintiff's RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR at 14 (emphasis omitted).) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 10, 15.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1–4, 6.) The ALJ's decision stands as the final decision of the Commissioner.

## III.

### *STANDARD OF REVIEW*

■ This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari,* 276 F.3d 453, 458–59 (9th Cir.2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari,* 257 F.3d 1033, 1035 (9th Cir.2001); *Tonapetyan v. Halter,* 242 F.3d 1144, 1147 (9th Cir.2001).

■ "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland,* 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998); *Mayes,* 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes,* 276 F.3d at 459. The ALJ's decision " 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.' " *Aukland,* 257 F.3d at 1035 (quoting *Sousa v. Callahan,* 143 F.3d 1240, 1243 (9th Cir.1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court " 'may not substitute its judgment for that of the ALJ.' " *Id.* (quoting *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1018 (9th Cir.1992)).

---

1. *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

2. Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan,* 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue,* 486 F.3d 1149, 1151 n. 2 (9th Cir.2007).

## IV.

### *ISSUES PRESENTED*

Five disputed issues are presented for decision here:

1. whether the ALJ's failed to obtain an informed waiver of Plaintiff's right to counsel, (*see* Pl.'s Mot. at 2–5);

2. whether the ALJ erred in finding that Plaintiff fails to meet one of the neurological listings of impairments, (*id.* at 5–10);

3. whether the ALJ failed to properly consider the opinions of Plaintiff's treating physicians, (*id.* at 10–12);

4. whether the ALJ failed to properly assess the credibility of Plaintiff and her mother, (*id.* at 13–15); and

5. whether the ALJ erred in failing to obtain testimony from a vocational expert. (*Id.* at 16.)

At this juncture, the Court finds the issue of Plaintiff's credibility to be dispositive of this matter, and does not reach the remaining issues.

## V.

### *DISCUSSION AND ANALYSIS*

Plaintiff argues that "the ALJ has failed to properly consider [Plaintiff's] testimony and he has failed to cite any evidence of record indicating that ... Plaintiff ... [is] exaggerating [her] symptoms and limitations or malingering in any way. Furthermore, the ALJ has failed to provide any clear and convincing reasons for rejecting the consistent and credible complaints of [Plaintiff]." (Pl.'s Mot. at 13.)

Defendant contends that the ALJ properly discounted Plaintiff's credibility because: (1) "the objective medical evidence did not support the degree of disability alleged by Plaintiff"; (2) "Plaintiff's own statements contradict her allegations of disability"; and (3) "Plaintiff's activities are not congruent with her allegations of total disability." (*See* Def.'s Mot. at 12–14.)

A. *The ALJ Must Provide Clear and Convincing Reasons For Discounting Plaintiff's Subjective Complaints*

 Plaintiff, of course, carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton ex rel. Benton v. Barnhart,* 331 F.3d 1030, 1040 (9th Cir. 2003). But once a plaintiff meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991) (*en banc*); *see also Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997, *as amended* Sept. 17, 1997) ("[A] claimant need not present clinical or diagnostic evidence to support the severity of his pain.") (internal citation omitted).

 Under these circumstances, an ALJ can then reject a plaintiff's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton,* 331 F.3d at 1040. The ALJ may consider the following factors in weighing a plaintiff's credibility:

(1) his or her reputation for truthfulness;

(2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct;

(3) his or her daily activities;

(4) his or her work record; and

(5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she

complains. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir.2002).

■ Here, the ALJ did not find evidence of malingering. (*See generally* AR at 10–15). Thus, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear and convincing reasons. *See Benton*, 331 F.3d at 1040. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995, *as amended* April 9, 1996); *Reddick*, 157 F.3d at 722.

### B. *Plaintiff's Subjective Complaints*

At the administrative hearing, Plaintiff testified that she cannot work because "I can be walking and I lose my balance." (AR at 21.) Plaintiff also described that she can sit for "about 15 to 20" minutes. (*Id.* at 23.) Plaintiff stated that she has experienced "these problems" for "six, seven years." (*Id.* at 21.) Plaintiff testified that her treating physician has "been conducting tests and researching [her disease, spinal cerebellar degeneration]," but her treating physician "says it's not curable" because "it's a degenerative disease." (*Id.* at 22; *see also id.* at 188.) Plaintiff also testified that she gets "headaches" a "couple of times a week" that can "last up to a day." (*Id.* at 26.)

Plaintiff further testified that she is a junior at Cal State San Bernardino and that the farthest she drives "at any one time" is "to school and back," which is about "20 minutes" from Riverside, where Plaintiff lives. (AR at 20, 24.) When questioned whether she stands or sits during her one hour class, Plaintiff responded that she "sit[s] down." (*Id.* at 26–27.) Plaintiff also stated, "[m]y teachers they know of my condition, so I tell them that I need to sit down and not stand up as much because if I'm like walking along the class-room [to do a presentation] I might lose my balance and fall and I don't want to do that in front of my classmates." (*Id.* at 27.)

At the hearing, Plaintiff also stated that she lives in a house with her parents, two brothers, two sisters and her son, who is two and a half years old. (AR at 25.) Plaintiff described that she is unable to hold her son because he is "too heavy" and is unable to walk "with him down the street" because "he'll run" and she is unable to "run after him." (*Id.* at 28.)

### C. *ALJ's Purported Reasons For Discounting Plaintiff's Credibility*

In rejecting Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ... residual functional capacity assessment." (AR at 13.) The ALJ further provided a summary of Plaintiff's testimony, but found that "[d]espite the asserted sitting limits she must sit up to 1 hour in class.... Despite the established impairment, [Plaintiff] remains quite active and is well able to tolerate regular driving, full time attendance at college and taking care of the active toddler." (*Id.* at 13–14.)

### D. *ALJ Inappropriately Discounted Plaintiff's Credibility*

After a careful review of the medical record and the parties' papers, the Court has considered the ALJ's reasons for finding Plaintiff not credible, and concludes that a remand is warranted on this issue. Three reasons guide this Court's determination.

First, the ALJ erred to the extent he rejected Plaintiff's credibility based on a lack of objective medical evidence. (*See* AR at 13.) Plaintiff provided sufficient medical evidence of an underlying impairment that was reasonably likely to cause the symptoms she described. For instance:

1. An MRI Radiology Report, dated May 18, 2007, stated that there is "[m]arked atrophy of the cerebellum, particularly the vermis which may be secondary to Dandy–Walker malformation, possibly in conjunction with Dilantin usage."[3] (*Id.* at 162.)

2. A treatment note, dated June 11, 2007, described that Plaintiff has "much difficulty touching end of her nose with finger, missed by about 2 inches" and "continues to have obviously abnormal gait[, and s]ways back and forth when walking at times, some times worse than others, some leg/hip shaking when going to sit up on exam table." (*Id.* at 137, 139.)

3. A Disability Report, dated October 22, 2007, and completed by "F. Orozco" reported that Plaintiff "was walking all crooked[;] her balance was off[f]. She was not able to walk in a straight line. She was really skinny. She had difficulty standing & sitting down." (*Id.* at 100–103.)

4. A letter, dated May 7, 2009, from treating neurologist Waseem N. Ibrahim, M.D. ("Dr. Ibrahim") stated that the "patient has spinal cerebellar degeneration. This is a hereditary and disabling disease that is not curable, and it causes incoordination in the upper and lower extremities."[4] (*Id.* at 188.)

certain jobs because of her neurologic dysfunction." (AR at 163–64.) However, in the report, Dr. Ibrahim also stated that he "will request an MRI of the cervical and thoracic spine, as well as an EMG/nerve conduction study on the upper and lower extremities" and a "final diagnosis will be determined after the above is available." (*Id.* at 164.) In contrast, Dr. Ibrahim's letter was written approximately one year and five months later on May 7, 2009 and he stated, Plaintiff "has been under my care for the past 2 years.... It is my opinion that this patient should be given permanent disability status." (*See id.* at 188.) Accordingly, the "inconsistent" records referred to by the ALJ were inconclusive at best.

In any event, the ALJ was free to ignore the portion of Dr. Ibrahim's opinion regarding Plaintiff qualifying for "permanent disability status." *See* 20 C.F.R. §§ 404.1527(e) (The Commissioner is charged with determining the ultimate issue of disability) & 416.927(e) (same). Dr. Ibrahim's indication that Plaintiff is disabled, however, does not mean that his assessment was biased and there is no evidence in the record to suggest that Dr. Ibrahim's overall opinion is "indulgent and accommodative." *See also Lester,* 81 F.3d at 832 (in the absence of actual improprieties, "[t]he Secretary may not assume that doctors

---

3. Cerebellum is the "large posterior brain mass lying posterior (dorsal) to the pons and medulla and inferior to the tentorium cerebelli and posterior portion of the cerebrum; it consists of two lateral hemispheres united by a narrow middle portion, the vermis." *Stedman's Medical Dictionary* 350 (28th ed. 2006). Dandy–Walker syndrome is a "developmental anomaly of the fourth ventricle associated with atresia of the foramina of Luschka and Magendie that results in cerebellar hypoplasia, hydrocephalus, and posterior fossa cyst formation." *Id.* at 1895.

4. Although the Court declines to address Plaintiff's claim regarding the ALJ's evaluation of the medical evidence, the Court notes that the ALJ's rejection of Dr. Ibrahim's opinion does not appear to be supported by substantial evidence.

The ALJ's rejection of "the indulgent and accommodative letter from Dr. Ibrahim ... [because it] is inconsistent with his records ... in which he states that only some types of work are precluded by [Plaintiff's] condition" is unpersuasive. The "records" referred to by the ALJ is an initial neurological consultation report completed by Dr. Ibrahim on December 18, 2007 in which he performed a neurological examination of Plaintiff and indicated his opinion that Plaintiff "is disabled from

5. A letter, dated November 6, 2009, from treating physician Revel T. Gaskins, M.D. stated that Plaintiff "suffers from progressive spinal cerebellar degeneration." (*Id.* at 201.)

■■■ Because Plaintiff produced sufficient medical evidence of an underlying impairment that is likely to cause difficulty in balancing and other subjective symptoms, the ALJ erred to the extent he rejected Plaintiff's credibility based upon a lack of objective findings to support her allegations. *See Bunnell,* 947 F.2d at 345 ("[O]nce the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); Social Security Ruling ("SSR") 96–7P,[5] 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

■■■ Second, the ALJ's rejection of Plaintiff's credibility based on her daily activities is not supported by substantial evidence. The ALJ found that Plaintiff "remains quite active and is well able to tolerate regular driving, full time attendance at college, and taking care of the active toddler." (AR at 13–14.) However, Plaintiff explained that driving to her school in San Bernardino from her home in Riverside takes "[a]bout 20 minutes," her teachers "know of [her] condition" and are able to accommodate her limitations, and she has difficulty in keeping up with her toddler. (*See id.* at 24, 27, 29.) Further, Plaintiff's mother testified that "everybody around us, like we help give the baby a bath and everything and we afraid she is going to drop him and everything.... When she's at home, someone always helps her." (*Id.* at 30–31.) Thus, the ALJ's paraphrasing of Plaintiff's daily activities is not entirely accurate. *See Reddick,* 157 F.3d at 722–23 ("[T]he ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").

Further, Plaintiff's activities do not support the ALJ's rejection of her subjective complaints or the ALJ's conclusion that she is able to sustain gainful employment, as none of Plaintiff's activities translate into an ability to do activities that are transferable to a work setting. *See Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir.1990) (ALJ errs in failing to make a finding to the effect that ability to perform daily activities translated into the ability to perform appropriate work); *see also Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

routinely lie in order to help their patients collect disability benefits[]") (internal quotation marks and citation omitted).

5. "The Commissioner issues Social Security Rulings [ ("SSRs") ] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari,* 246 F.3d 1195, 1203 n. 1 (9th Cir.2001) (internal citations omitted).

The fact that Plaintiff attends class and drives to school does not render her subjective complaints incredible, as Plaintiff is not required to "vegetate in a dark room excluded from all forms of human and social activity" in order to be found disabled. *Smith v. Califano,* 637 F.2d 968, 971 (3d Cir.1981). And, as the Ninth Circuit has recognized, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick,* 157 F.3d at 722.

Third, while the ALJ properly found Plaintiff's statements regarding her ability to sit inconsistent, the Court is unconvinced that the ALJ's decision remains legally valid, despite the errors in the credibility analysis. (*See* AR at 13 ("Despite the asserted sitting limits she must sit up to 1 hour in class.")); *Carmickle v. Comm'r,* 533 F.3d 1155, 1162 (9th Cir.2008) (stating that the "relevant inquiry ... is whether the ALJ's decision remains legally valid," despite errors in the credibility analysis).

## VI.

### *REMAND IS APPROPRIATE*

 The court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan,* 888 F.2d 599, 603 (9th Cir.1989, *as amended* Oct. 19, 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart,* 379 F.3d 587, 595–96 (9th Cir.2004); *Harman v. Apfel,* 211 F.3d 1172, 1179–80 (9th Cir.2000, *as amended* May 4, 2000), *cert. denied,* 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke,* 379 F.3d at 595–96; *Harman,* 211 F.3d at 1179–80.

 Here, there are outstanding issues which must be resolved before a final determination can be made. On remand, the ALJ shall reconsider Plaintiff's subjective complaints and the resulting functional limitations, and either credit Plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them. The ALJ shall also reassess the credibility of Plaintiff's mother. In addition, the ALJ shall reassess the medical opinions in the record and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions. If necessary, the ALJ shall obtain additional information and clarification regarding Plaintiff's functional limitations. Further, the ALJ shall then proceed through steps three through four and, with the assistance of a vocational expert, reassess his step five determination.[6]

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

---

**6.** In light of the Court's remand instructions, it is unnecessary for the Court to address Plaintiff's remaining contentions. (*See* Mot. at 2–5, 5–10, 10–12, 16.)