Gail F. POWELL, Plaintiff,

v.

**Shirley S. CHATER, Commissioner of Social Security Administration, Defendant.**

No. CV 96–3296–RC.

United States District Court, C.D. California.

March 7, 1997.

---

Cindy W. Graff, Shelley & Graff, Pasadena, CA, for Plaintiff.

Lawrence E. Kole, Asst. U.S. Attorney, Los Angeles, CA, for Defendants.

## MEMORANDUM DECISION AND ORDER

CHAPMAN, United States Magistrate Judge.

Plaintiff Gail Powell filed a complaint on May 8, 1996, seeking review of the Commissioner's decision denying her disability benefits. The plaintiff filed a motion for summary judgment on September 4, 1996, and the defendant filed a cross-motion for summary judgment on November 4, 1996. The plaintiff did not file a reply.

## BACKGROUND

### I

On April 13, 1992, the plaintiff submitted a claim for disability benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 423, as well as a claim for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act, 42 U.S.C. § 1382(a), asserting an inability to work since June 12, 1991, due to neuromuscular weakness, fatigue, shortness of breath, chest pains and an infection. (Certified Administrative Record ("AR") 29–33, 84–96). The plaintiff's applications initially were denied on November 25, 1992, and were denied following reconsideration on March 29, 1993. (A.R.56–61, 80–83).

The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge ("ALJ") J. Leeds Barroll on January 31, 1995. (A.R.101–02, 358). At the hearing, the ALJ heard the testimony of the plaintiff, medical expert Sami Nafoosi, M.D., and vocational expert Patricia Hadley. (A.R.358–86). On March 27, 1995, the ALJ issued a decision finding that the plaintiff was not disabled. (A.R.9–18). The plaintiff sought review by the Appeals Council; however, review was denied on March 14, 1996. (A.R.4–5, 7–8).

### II

The plaintiff was born on September 27, 1940; she is currently 57 years old. (A.R.29, 359). The plaintiff has a high school education and past relevant work experience in the banking industry, including work as an adjustment specialist, a bank teller, a computer operator, a securities clerk and a data entry clerk. (A.R.37, 41–46, 360).

The ALJ determined that the plaintiff could perform her past relevant work in the banking industry. (A.R.17). In reaching this conclusion, the ALJ determined that the plaintiff's subjective complaints were not credible. (A.R.14, 17).

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ improperly rejected the opinions of several treating and examining physicians in favor of a nontreating, nonexamining physician. The plaintiff also argues that the ALJ improperly determined that she was not credible.

## DISCUSSION

### III

Pursuant to 42 U.S.C. § 405(g), the Court has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir.1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health & Human Servs.,* 846 F.2d 573, 576 (9th Cir.1988) (citations omitted).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports plaintiff's claims. *Torske v. Richardson,* 484 F.2d 59, 60 (9th Cir.1973) (per curiam), *cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974); *Harvey v. Richardson,* 451 F.2d 589, 590 (9th Cir.1971) (per curiam). The Court must consider the record as a whole, considering adverse as well as supporting evidence. *Green v. Heckler,* 803 F.2d 528, 529–30 (9th Cir. 1986). The Commissioner's decision should be upheld even if the evidence is susceptible to more than one rational interpretation. *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir.1984). The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g).

The claimant is "disabled" for the purpose of receiving benefits under the Social Security Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1505(a),

416.905(a). The claimant has the burden of establishing a *prima facie* case for disability. *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir.1992) (citing *Gallant,* 753 F.2d at 1452).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). if the claimant has a severe impairment, in the **Third Step**, the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). When the claimant's impairment does not meet or equal an impairment in Listing, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient "residual functional capacity" despite the impairment or various limitations to perform his past work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant has the burden of proving he is unable to perform past relevant work. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir.1986). When the claimant shows an inability to perform past relevant work, a *prima facie* case of disability is established and, in **Step Five,** the burden shifts to the Commissioner to prove that the claimant, based on his age, education, work experience and residual functional capacity, can perform other substantial gainful work. 20 C.F.R. §§ 404.1520(f), 416.920(f). *Howard,* 782 F.2d at 1486; *Magallanes v. Bowen,* 881 F.2d 747, 756 (9th Cir.1989); *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988).

Applying the five-step sequential evaluation process, the ALJ determined that the plaintiff has not engaged in any substantial gainful activity since June 12, 1991. (Step One). The ALJ then found that the plaintiff "has benign monoclonal gammopathy,[1] and occasional hypertension," and that her physicians have diagnosed the plaintiff with chronic fatigue syndrome and fibromyalgia.[2] (Step Two). The ALJ further determined that the plaintiff does not have an impairment or combination of impairments that meets or equals any Listing. (Step Three). The ALJ then concluded that the plaintiff has the residual functional capacity to perform her past relevant work as a bank teller, an adjustment specialist, a computer operator, and a data entry clerk. (Step Four). Thus, the ALJ determined that the plaintiff was not disabled. (A.R.17).

### IV

■ The ALJ erred in Step Two when he implicitly determined that the plaintiff did not suffer from the severe impairments of chronic fatigue syndrome [3] and fibromyalgia. A severe impairment or combination of impairments is shown when the evidence establishes more than a minimal effect on an

---

1. Benign monoclonal gammopathy is "the presence of serum M component without signs or symptoms of multiple myeloma, Waldenström's macroglobulinemia, or other plasma neoplasms; it occurs in about 3 per cent of the population over age 70. A few patients eventually develop a malignant plasma cell dyscrasia; most do not." *Dorland's Illustrated Medical Dictionary,* 675 (28th ed.1994).

2. The ALJ did not find that the plaintiff actually suffers from chronic fatigue syndrome and fibromyalgia.

3. Chronic fatigue syndrome consists of "persistent debilitating fatigue of recent onset, with reduction of physical activity to less than half of usual, accompanied by some combination of muscle weakness, sore throat, mild fever, tender lymph nodes, headaches, and depression, with the symptoms not attributable to any other known causes." *Dorland's Illustrated Medical Dictionary,* 1627 (28th ed.1994).

individual's ability to do basic work activities. *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir.1996) (citing *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir.1988)); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is [ ] severe if it [ ] significantly limit[s an individual's] physical or mental ability to do basic work activities.") Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, as well as understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b) (1, 3–6), 416.921(b) (1, 3–6).

■ When the plaintiff's testimony is properly credited,[4] as discussed below, it clearly demonstrates that the ALJ's implicit determination that the plaintiff does not suffer from the severe impairments of chronic fatigue syndrome and fibromyalgia is not supported by substantial evidence. *Smolen,* 80 F.3d at 1290.

Roger Lind, M.D., the plaintiff's treating physician, has diagnosed the plaintiff with chronic fatigue syndrome, benign monoclonal gammopathy, hypertension, chronic allergic rhinitis, migraine headaches, depression and "multiple medical problems" (A.R.181, 189, 213, 219, 301), and has found that the plaintiff is permanently disabled.[5] (A.R.207, 213, 288–89, 336). Dr. Lind most recently evaluated the plaintiff on July 26, 1994, at which time, he continued to diagnose chronic fatigue syndrome, hypertension and migraine headaches, and also reported a history of Graves' disease.[6] (A.R.269). Dr. Lind noted that the plaintiff reported that she "is fatigued [and] can not do anything. She feels a little bit swollen. She is gaining weight because of her inactivity." (*Id.*).

The plaintiff was also evaluated by Ellen Blanton, M.D., a consulting rheumatologist, on February 17, 1993; at that time, Dr. Blanton found that the plaintiff had many features in her history to suggest fibromyalgia, including severe fatigue, diffuse achiness and post-exertional fatigue, and many of the characteristic soft tender points.[7] (A.R.324–28). Dr. Blanton reexamined the plaintiff on March 30, 1993, and diagnosed fibromyalgia and chronic fatigue syndrome. (A.R.377).

Sami Nafoosi, M.D., testified as a medical expert at the administrative hearing. (A.R. 375–79). Dr. Nafoosi reviewed the plaintiff's

---

4. The plaintiff testified that she is only able to stand for between 15 and 30 minutes and walk approximately one-half block at a time. This would, of course, contradict the ALJ's conclusion that the plaintiff could perform light work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); *Gallant,* 753 F.2d at 1454 n. 1.

5. On April 25, 1995, Dr. Lind wrote a letter vigorously disagreeing with the ALJ's conclusion that the plaintiff was not disabled. (A.R.349–50). In the letter, Dr. Lind commented:

> I am quite sensitive to malingering and I do have many patients who are permanently disabled and who I feel are definite malingerers; however, Mrs. Powell falls into another category. She has an illness for which there is no diagnostic marker or test. The diagnosis of both fibromyalgia and chronic fatigue syndrome depend upon the credibility of the subjective complaints of the claimant.

(A.R.350).

The Commissioner contends that Dr. Lind's letter constitutes advocacy on the plaintiff's behalf, and his opinion should be deemed less credible, as a result. However, where, as here, there is no evidence of any actual improprieties by Dr. Lind,

and since Dr. Lind "repeatedly set forth both the evidence that supported his conclusions and that which undermined them," the Commissioner's position is without merit. *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir.1996).

6. Graves' Disease is "a disorder of the thyroid usually of autoimmune etiology, occurring most often in women but not uncommon in men, characterized by at least two of the following: hyperthyroidism, goiter, and exophthalmos." *Dorland's Illustrated Medical Dictionary,* 482 (28th ed.1994). Exophthalmos is "an abnormal protrusion of the eyeball." *Id.* at 592.

7. Fibromyalgia's "symptoms are entirely subjective.... The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the plaintiff must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the plaintiff to flinch." *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir.1996)

medical history and, from this history, diagnosed hypertension and upper respiratory tract infections; Dr. Nafoosi further noted that the plaintiff was hospitalized for cardiac arrhythmia in July 1991. (A.R.377). Dr. Nafoosi never offered an opinion as to whether the plaintiff actually had either chronic fatigue syndrome or fibromyalgia; rather, he simply testified that Dr. Lind diagnosed chronic fatigue syndrome and Dr. Blanton diagnosed fibromyalgia. Thus, his testimony does not contradict either Dr. Lind's diagnosis of chronic fatigue syndrome or Dr. Blanton's diagnosis of fibromyalgia. Dr. Nafoosi summarily concluded that he would restrict the plaintiff to a full range of light work.[8] (A.R.378). Furthermore, Dr. Nafoosi provided no basis for his conclusion that the plaintiff can perform light work; he neither analyzed the plaintiff's complaints, nor the reports of any treating or examining physician. Moreover, this conclusion, as discussed below, is not supported by the other medical evidence, and conflicts with it.

■ The medical opinions of treating physicians are entitled to special weight. *Embrey v. Bowen*, 849 F.2d at 421; *Desrosiers*, 846 F.2d at 576. This is because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.1987). Therefore, the Commissioner must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician. *Magallanes v. Bowen*, 881 F.2d at 751. "Even if [a] treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995) (citations and internal punctuation omitted).

Here, the ALJ rejected Dr. Lind's diagnosis of chronic fatigue syndrome, and his conclusion that the plaintiff was totally disabled,

in favor of Dr. Nafoosi's unsupported conclusion that the plaintiff could perform the full range of light work. The ALJ based his rejection of Dr. Lind's diagnosis on his belief that the diagnoses of Drs. Lind and Blanton differed, and his finding that the plaintiff was not a credible witness. (A.R.14–15). The ALJ erred in both regards.

There is no conflict between the diagnosis of chronic fatigue syndrome by Dr. Lind and the diagnosis of fibromyalgia by Dr. Blanton. When Dr. Blanton reevaluated the plaintiff on March 30, 1993, she diagnosed the plaintiff with "fibromyalgia/chronic fatigue syndrome." (A.R.323). Additionally, chronic fatigue syndrome and fibromyalgia share a number of common features. *Sarchet*, 78 F.3d at 306; *See also* Fay E. Fishman, *Chronic Fatigue Syndrome and Social Security Disability*, 42 Soc. Sec. Report and Recommendation. Ser. 789, 793 (West 1993) (noting that chronic fatigue syndrome is often confused with fibromyalgia). Therefore, the slightly differing diagnoses of Drs. Lind and Blanton do not provide a specific and legitimate reason for the ALJ to reject either Dr. Lind's diagnosis of chronic fatigue syndrome or Dr. Blanton's diagnosis of fibromyalgia. *Lester*, 81 F.3d at 830; *Magallanes*, 881 F.2d at 751. Accordingly, the ALJ's implied determination in Step Two, that the plaintiff did not suffer from the severe impairments of chronic fatigue syndrome and fibromyalgia is not supported by substantial evidence. Further, as noted below, the ALJ also improperly concluded that the plaintiff was not a credible witness. (*See* Part V).

## V

■ The ALJ further erred in Step Four, in determining that the plaintiff retains the residual functional capacity to perform her past relevant work in the banking industry. A claimant's residual functional capacity is what she can still do despite her physical,

---

**8.** Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of

the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

mental, nonexertional, and other limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir.1989); 20 C.F.R. §§ 404.1545(a), 416.945(a).

At the hearing, the plaintiff testified that her illnesses, chronic fatigue syndrome and fibromyalgia, leave her constantly exhausted. (A.R.363–64). She stated that she also experiences migraine headaches, shortness of breath, lightheadedness, concentration difficulties, and muscle and joint pain and stiffness in her neck, back, and upper and lower extremities. (A.R.364–65). The plaintiff estimated that she is able to stand for between 15 and 30 minutes and walk approximately one-half a block at one time. (A.R.366–67). She stated that she does not do any housework or grocery shopping, and spends the majority of her day lying down, sometimes listening to the radio and occasionally watching television or trying to read. (A.R.365, 369, 370).

The ALJ determined that the plaintiff's subjective complaints were not credible because she "desperately [attempted] to denigrate her computer experience at the hearing," and because she failed to cooperate with an examining physician. (A.R.13–14). The ALJ stated that:

> [The plaintiff] testified that she did only a little bit of typing and did not use a computer regularly. [Rather,] ... she used the computer only to keep track of envelopes. I noted, however, that on her disability background report, she indicated that she had used the computer rather extensively in her work at the bank. She said that she needed to use the computer to log in suspense work, to prepare research work, and to locate envelopes of customers' daily deposits. She said that she used a BTS terminal and computer for

research and for keeping records of work volume.... When I called this information to her attention, she said that the computer that she used was different from the computers used today. Later in the hearing, she finally agreed that she had done data entry work in the past, and she acknowledged that she had some familiarity with computers.

(A.R.13–14).

A close review of the plaintiff's testimony reveals that the perceived inconsistencies between that testimony and the plaintiff's prior disability reports are minimal, at best. The plaintiff testified that as an adjustment specialist—RTM, she utilized the computer "[a]bout once a week, just to put in the numbers and stuff for [sic] to keep track of something, of envelopes." (A.R.375). The ALJ found this statement inconsistent with a prior description of the job, reported in the March 30, 1992 disability report. (A.R.14, 37). However, in the March 30, 1992 report, the plaintiff indicated that her duties as an adjustment specialist required that she "[l]ocate missing RTM envelopes of customers['] daily deposits," utilizing equipment including "BTS terminals and computer[s] for research and keeping records of work volume." [9] (A.R.37). Significantly, the disability report does not show the plaintiff spent substantial time utilizing a computer. [10] Thus, the plaintiff's March 30, 1992 disability report is not incompatible with her testimony. The ALJ also found not credible the plaintiff's statement that the computers she used were "not regular computers as computers are today." (A.R.14). The plaintiff's statement, however, does not refer to computer usage during her employment as an adjustment specialist, as the ALJ implied; rather, her statement re-

---

9. The plaintiff described her job duties as an adjustment specialist—RTM, as follows:

   Locating missing RTM envelopes of customers daily deposits[.] Log in suspense work—research work—use BTS terminals and computer for research and keeping records of work volume. 10 key adding machine—phone work—recover lost work from branches or with in [sic] the unit. [¶] Contact banking offices, other departments and customers by phone[;] answer phone inquiries—keep detailed documentation of all work done. Re-

search takes me all over building looking for work to resolve problems—Standing for set up work on Monday[;] carry trays of work—cut envelopes on counter and opener machines[;] lots of paper dust.

   (A.R.37).

10. The plaintiff also completed a vocational report on March 30, 1992. (A.R.41–46). This report described the plaintiff's duties as an adjustment specialist—RTM in essentially the same manner as the disability report. (A.R.42).

lates to her work experience as a computer input clerk, a position she held from November 1972 until April 1983. (A.R.37, 41, 380–81). The ALJ also found that the plaintiff was not credible because she did not admit she had previous data entry experience until the vocational expert testified. (A.R.14). However, it was not until the vocational expert testified that the plaintiff was asked specifically about her prior work experience as a data entry clerk. (A.R.380–81). This does not show lack of candor.

Finally, the ALJ found that the plaintiff was not credible because of her "refusal to cooperate" with Kristoff Siciarz, M.D., an internist who examined her on October 24, 1992. (A.R.14, 172–78). The ALJ's finding of lack of cooperation stemmed from Dr. Siciarz's opinions that the plaintiff's decreased strength in her upper and lower extremities "appears to be related to poor effort rather than to true weakness" (A.R.176); that the plaintiff used a cane although she was able to walk without it (*Id.*); and that the plaintiff "gave a poor effort when extending her knees[.]" (*Id.*). Although Dr. Siciarz opined that the plaintiff's efforts were less than optimal on certain tests, he did not find that the plaintiff was exaggerating her condition.[11] To the contrary, Dr. Siciarz specifically found that the plaintiff **"most likely has chronic fatigue syndrome."** (A.R.177) (emphasis added). Since a diagnosis of chronic fatigue syndrome is based primarily on subjective complaints, Dr. Siciarz would have had to believe the plaintiff's subjective complaints to voice this opinion. Thus, Dr. Siciarz's report does not support the ALJ's determination that the plaintiff was not credible.

■ When the Commissioner finds the claimant's complaints of pain or other nonexertional limitations to be not credible, she must make specific findings to support that conclusion. *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991). "Factors that the adjudicator may consider when making such credibility determinations include the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of

any pain medication, and relevant character evidence." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir.1995); *Fair v. Bowen,* 885 F.2d 597, 603–604, 604, n. 5 (9th Cir.1989); *Bunnell,* 947 F.2d at 346–47. The ALJ's findings to support his conclusion that the plaintiff was not credible are not supported by substantial evidence, and accordingly, the conclusion that plaintiff has the residual functional capacity to perform her past relevant work also is not supported by substantial evidence.

## VI

■ When the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987); *Sprague,* 812 F.2d at 1232.

■ "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) (quoting *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981)). Remand is appropriate if the record is incomplete and additional evidence could complete the record. *Marcia v. Sullivan,* 900 F.2d at 175 (remand appropriate at Step Three inquiry); *Gamer v. Secretary of Health & Human Servs.,* 815 F.2d 1275, 1280 (9th Cir. 1987) (hypothetical question asked of the vocational expert did not include all of plaintiff's impairments).

■ Here, the ALJ erred in both Step Two and Step Four of the sequential evaluation process. At Step Two, the ALJ's implied findings that the plaintiff does not have the severe impairments of chronic fatigue syndrome and fibromyalgia are not supported by substantial evidence. At Step Four, the ALJ's determination that plaintiff's complaints of pain and fatigue were not cred-

---

11. The ALJ erroneously stated that "Dr. Siciarz also noted that the claimant exaggerated her condition" (A.R.14); however, Dr. Siciarz never made that statement. (A.R.172–78).

ible is not supported by substantial evidence; this error, in turn, means that the ALJ's conclusion that the plaintiff has the residual functional capacity to perform her past relevant work is not supported by substantial evidence. Additional proceedings can remedy these defects. Therefore, remand is the appropriate remedy. Upon remand, the Commissioner should consider all of the plaintiff's impairments, as well as her subjective complaints, and determine whether the plaintiff is disabled.

## ORDER

IT IS ORDERED that: (1) plaintiff's motion for summary judgment is granted; (2) the defendant's motion for summary judgment is denied; and (3) the Commissioner's decision is reversed and the action is remanded to the Social Security Administration for further proceedings consistent with this memorandum decision, pursuant to sentence four of 42 U.S.C. § 405(g).